**BURLINGTON DYEING & FINISHING CO. v. NATIONAL LABOR RELATIONS BOARD.**

**No. 4436.**

Circuit Court of Appeals, Fourth Circuit.

June 13, 1939.

Charles A. Horsky, Sp. Atty., Department of Justice, of Washington, D. C. (Charles Fahy, Gen. Counsel, Robert B. Watts, Associate Gen. Counsel, and Mortimer B. Wolf and Mary Lemon Schleifer, Attys., National Labor Relations Board, all of Washington, D. C., on the brief), for respondent.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This case comes before the court upon petition of the Burlington Dyeing & Finishing Company, a North Carolina corporation, here referred to as the petitioner, filed under Section 10(f) of the National Labor Relations Act (49 Stat. 453, 29 U.S.C.A. § 151 et seq.) to review and set aside an order issued by the National Labor Relations Board pursuant to Section 10(c) of that Act and for leave to adduce additional evidence pursuant to Section 10 (e) of the Act. In its answer to the petition the Board requested the enforcement of its order in full without the taking of additional evidence.

The proceedings before the Board were taken pursuant to an amended charge filed by a representative of Textile Workers Organizing Committee, here called T. W. O. C., a labor organization affiliated with the C. I. O. Complaint and notice of hearing were issued and served upon petitioner. The substance of the complaint was that the petitioner had engaged in and was engaging in unfair labor practices affecting commerce within the meaning of Section 8(1) and (3) and Section 2(6) and (7) of the Act by discharging and refusing to reinstate four employees, W. J. Johnson, O. W. Porter, H. C. Brooks, and Ely Thomey, for the reason that the said four employees had joined and assisted the T. W. O. C., and had been active in promoting said union. In its answer to the complaint petitioner reserved its right to enter a special appearance and move to dismiss for lack of jurisdiction, denied that it was engaged in interstate commerce or that it had engaged in any of the unfair labor practices charged in the complaint.

A hearing was held at Graham, North Carolina, in March, 1938, before a Trial Examiner duly designated by the Board. Counsel for petitioner entered a special appearance and moved to dismiss for lack of jurisdiction. The Trial Examiner denied the motion and proceeded to hear the

Thomas D. Cooper, of Burlington, N. C. (Cooper, Curlee & Sanders, of Burlington, N. C., on the brief), for petitioner.

evidence, petitioner being represented by counsel throughout the hearing. At the conclusion of the evidence offered by the Board, and again at the conclusion of petitioner's evidence, counsel for petitioner moved to dismiss the complaint on the ground that the evidence failed to sustain the allegations of the complaint. During the course of the hearing the Examiner granted motions to conform the complaint and answer to the proof.

On July 5, 1938, the Trial Examiner filed with the Board his Intermediate Report denying petitioner's motions to dismiss, and finding that petitioner had engaged in unfair labor practices within the meaning of Section 8(1) and (3) and Section 2(6) and (7) of the Act in discharging and refusing to reinstate H. C. Brooks, but recommending that the complaint be dismissed in so far as it alleged that petitioner had engaged in unfair labor practices by discharging and refusing to reinstate W. J. Johnson, O. W. Porter, and Ely Thomey, the other three employees named in the complaint. On July 28, 1938, T. W. O. C., filed exceptions to the Intermediate Report and on August 25, 1938, pursuant to notice served upon the parties, a hearing for the purpose of oral argument was held before the Board. Petitioner did not appear at this hearing.

On December 1, 1938, the Board issued its decision finding that it had jurisdiction of the case and that the petitioner had been guilty of unfair labor practices in discharging and refusing to reinstate two employees, W. J. Johnson and H. C. Brooks, but holding that the discharging of O. W. Porter and Ely Thomey was justified. An order was entered directing the reinstatement, with pay for part of the time from his discharge until his reinstatement, of W. J. Johnson and directing the reinstatement and pay for all the time from his discharge until his reinstatement of H. C. Brooks, less his net earnings during such period. The order further directed that the petitioner post notices in conspicuous places throughout its plant stating that the petitioner would cease and desist from the unfair labor practices, of which it had been found guilty. The order also contained other provisions which are not at issue here.

Petitioner is engaged in dyeing and finishing acetate, rayon, and silk fabrics at a plant near Burlington, North Caro-

lina. Petitioner does not own the fabrics which it dies and finishes. A large percent of the fabrics treated in petitioner's plant is caused to be shipped to it from points within the State of North Carolina and a large percentage of the fabrics processed is shipped to destinations outside the State of North Carolina. Among the raw materials used by petitioner, sixty-five percent of the chemicals, fifty percent of the paper, five percent of the dyestuffs, and eighty-five percent of the salt is received from sources outside the State of North Carolina. During 1937 petitioner's business totaled between $300,000 and $400,000. The petitioner ordered all raw materials from North Carolina resident agents of the sellers. During normal seasons the petitioner had approximately 225 employees with a weekly payroll of about $3,500.00.

On July 8, 1937, the petitioner discharged one of its employees, W. J. Johnson, and had refused to further employ him and on October 4, 1937, another employee, H. C. Brooks, had been laid off and had not been put back to work.

■ It is necessary to first consider the question of jurisdiction. We are of the opinion that under the decisions of the Supreme Court in National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; National Labor Relations Board v. Friedman-Harry Marks Clothing Co., 301 U.S. 58, 57 S.Ct. 645, 630, 81 L.Ed. 921, 108 A.L.R. 1352, and Consolidated Edison Co. et al. v. National Labor Relations Board et al., 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126, the business of the petitioner company comes within the purview of the Act. We have also held to the same effect in a number of opinions. National Labor Relations Board v. Eagle Mfg. Co., 4 Cir., 99 F.2d 930, and cases there cited.

We next come to consider the discharge of the employees, W. J. Johnson, and H. C. Brooks. With regard to Johnson, a careful search of the record discloses no evidence that his discharge was brought about because of his union membership or union activities other than the surmise by Johnson himself. His was the only evidence on that point and that was only an opinion based upon no fact and unsupported by the testimony of any other witness. The Trial Examiner who heard the witnesses and saw their demeanor on the witness stand found

to this effect. On the other hand, there was ample evidence, corroborated and uncontradicted, that there was good cause for Johnson's discharge. Johnson had been careless in his work and had been reprimanded because of it and immediately prior to his discharge he had damaged a large amount of cloth. He was admittedly guilty of infractions of the rules of the company.

■ While it is true that courts cannot make their own appraisal of the evidence and that findings of the Board as to facts, if supported by evidence, shall be conclusive, yet if the findings of the Board are not supported by substantial evidence they will be reversed. Appalachian Electric Power Co. v. National Labor Relations Board, 4 Cir., 93 F.2d 985; National Labor Relations Board v. Columbian Enameling & Stamping Co., Inc., 59 S.Ct. 501, 83 L. Ed. ——.

■ Here the Board, without any basis of fact that can be found in the evidence offered, reversed the findings of the Examiner as to Johnson and ordered his reinstatement and that he be paid in part. The reasons given by the Board for its conclusion are the admitted facts that the officers of the company were opposed to labor unions and that Johnson was a member of such a union. A conversation between Johnson and a foreman as to his reading a C. I. O. newspaper, also relied upon by the Board, is entirely too unsubstantial as a basis for a finding that he was discharged because of union membership. We are of the opinion that these facts alone are not sufficient to prove the petitioner company guilty of an unfair labor practice. The Board found it significant that no documentary evidence had been produced by the petitioner at the hearing, showing that goods were damaged by Johnson, yet the Board refused the request of the petitioner to offer such additional evidence later on the ground that the hearing had been closed and that the petitioner had had an opportunity to produce such evidence without doing so. We are of the opinion that the attitude of the Board on this point was technical but, in view of our conclusion as to the discharge of Johnson, it is not necessary to decide whether the petitioner should have been allowed to produce additional evidence. In discharging Johnson the petitioner did not engage in any unfair labor practice.

■ The evidence with regard to the laying off and failure to reemploy H. C. Brooks shows that he had worked in the third shift of the finishing department of the petitioner's plant for more than a year prior to his suspension and was the senior of the six men making up the shift. He had never been reprimanded by his superiors for any fault as to his work and was, at least, an average workman.

Brooks was a member of the T. W. O. C. and was active in soliciting his fellow employees to join the union. This fact was known to some of his superiors. The reason given for his being laid off was the discontinuance of the shift on which he worked. Of the other five men working on the shift with Brooks one or two found other outside employment and the others were transferred to different work in petitioner's plant. The result of the discontinuance of the shift was the elimination of Brooks alone. He was never put back to work although he applied for reinstatement when he learned of a vacancy. The petitioner offered no evidence at the hearing to justify the suspension of Brooks because of any fault as a workman.

From these facts and circumstances the Board found that Brooks was laid off because of his union activities and that this action of the petitioner was an unfair labor practice within the meaning of the Act. While we might not have reached the same conclusion in considering the evidence, the findings of the Board as to the facts are conclusive, if supported by evidence, and we are of the opinion that there was substantial evidence to support the finding as to Brooks.

■ The question as to the form of the notice required to be posted at petitioner's plant has been repeatedly passed upon by this court and for the reason so ably given by Judge Soper in National Labor Relations Board v. A. S. Abell Company, 4 Cir., 97 F.2d 951, we have refused to approve the notice as worded by the Board. We again held to the same effect in National Labor Relations Board v. Eagle Mfg. Co., supra. We are still of the opinion that our holding on this point is correct and the notice required to be posted will be modified accordingly.

An order will be signed in accordance with this opinion directing the order of the Board as modified to be enforced.