NATIONAL LABOR RELATIONS BOARD
v. PIQUA MUNISING WOOD
PRODUCTS CO.

No. 8233.

Circuit Court of Appeals, Sixth Circuit.

Feb. 16, 1940.

ARANT, Circuit Judge, dissenting in part.

Alvin J. Rockwell, of Washington, D. C. (Charles Fahy, Robert B. Watts, Mortimer B. Wolf, and Allen Heald, all of Washington, D. C., on the brief), for petitioner.

554

E. W. LeFever, of Cleveland, Ohio (Jones, Day, Cockley & Reavis, of Cleveland, Ohio, on the brief), for respondent.

Before SIMONS, HAMILTON, and ARANT, Circuit Judges.

HAMILTON, Circuit Judge.

This case arises out of a petition of the National Labor Relations Board filed pursuant to Section 10(c) of the National Labor Relations Act (49 Stat. 449, U.S.C. Supp. 111, Title 29, Sec. 151, et seq., 29 U.S.C.A. § 151 et seq), to enforce its order theretofore issued against the respondent, an Ohio corporation, engaged in the business of manufacturing woodenware, with its principal office in Cleveland, Ohio.

Upon an appropriate complaint, which was denied in its material allegations by respondent's answer, the Board found that respondent had engaged in unfair labor practices within the meaning of Section 8(1) of the Act by interfering with its employees' right to self organization and of Section 8(5) by refusing to bargain with Federal Labor Union Local 18,787, its employees' representative and an affiliate of the American Federation of Labor, hereinafter referred to as the "Union."

So far as material here, the complaint stated that all of the employees of the respondent, excluding those in clerical and supervisory positions, were an appropriate unit for the purpose of collective bargaining and that on or before July 27, 1937, and thereafter, a majority of them had designated the Union as their representative for that purpose. It was then alleged that the respondent had refused to recognize the unit and its agency and had interfered with, restrained and coerced its employees, in the exercise of their rights under Section 7 of the Act, 29 U.S.C.A. § 157, and was so continuing.

The respondent resists the enforcement of the order on the following grounds:

(a) That substantial evidence is lacking to support the finding that a majority of the members of the unit designated the Union as their bargaining representative;

(b) That there was no violation of the Act by a refusal to bargain until there had been a prior determination by the Board of the appropriate unit and agency;

(c) That an unlawful refusal to recognize a bargaining representative is a violation of Section 8(5) of the Act, not of Section 8(1);

(d) That the Board's order is in excess of its jurisdiction because it found the respondent guilty of an unfair labor practice without supporting complaint;

(e) That the Board's order is void because respondent's refusal to bargain occurred subsequent to the execution and filing of the charge.

■ There is substantial evidence to support the Board's finding that respondent's production and maintenance employees, exclusive of those in clerical and supervisory positions, constituted a unit appropriate for collective bargaining. National Labor Relations Board v. Lund, 8 Cir., 103 F.2d 815; National Labor Relations Board v. Colton, 6 Cir., 105 F.2d 179.

The evidence shows that respondent had 143 employees, eight of whom occupied supervisory or clerical positions, which left 135 in production. The Board's finding that the Union represented a majority of the unit for bargaining is supported by 82 application cards signed by employees seeking membership in the Union. Of these, two had discontinued their employment before July 27, 1937. Twelve of the cards are undated and one is post-dated September 21, 1937, leaving 67 members.

Respondent concedes that four employees were members of the Union prior to July 27, 1937, whose names do not appear on application cards. Employees Spangler and Pittman, whose names also did not appear, testify without contradiction that they had been members for several years prior to July 27, 1937. This makes a total of 73 out of the appropriate unit.

■ Respondent's contention that some of the cards lack probative value because dated in 1935 and 1936 is without merit. It is a well-established rule of evidence that when the existence of a personal relationship or state of things is once established by proof, the law presumes its continuance until the contrary is shown or until a different presumption arises from the nature of the subject matter. National Labor Relations Board v. National Motor Bearing Company, 9 Cir., 105 F.2d 652. The question as to the presumption of the continuation of membership in the Union was one of fact and rested within the sound discretion of the Board to be decided in the light of the facts and circumstances before it. Hiser, the Union president, testified that the persons whose names

appeared on the membership cards were members of the Union.

Respondent's contention that the Board erred in assuming that the unit contained the some number of employees belonging to the Union on August 8, 1937, as of July 27, 1937, must be denied. The Act defines "employee" to "include * * * any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment." 29 U.S.C.A. § 152(3). The act also defines "labor dispute" to include "any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee." 29 U.S.C.A. § 152(9).

During the period between July 27, 1937, and August 8, 1937, the dispute between the respondent and its employees was current. The relationship of the parties had not been so completely terminated as to give rise to the presumption that any one of them had discontinued his employee relationship or had obtained regular and substantially equivalent employment elsewhere. Jeffrey-De Witt Insulator Co. v. National Labor Relations Board, 4 Cir., 91 F.2d 134, 112 A.L. R. 948; National Labor Relations Board v. Carlisle Lumber Co., 9 Cir., 94 F.2d 138; Black Diamond S. S. Corporation v. National Labor Relations Board, 2 Cir., 94 F. 2d 875.

Respondent challenges three of the application cards for membership in the Union upon the ground that they are undated as shown by the printed summary. The original exhibit shows dates and is controlling. The respondent also contends that four or five names should be eliminated from the list because Hiser, Union president, testified they were on the fence and wanted, to play both sides, and further that respondent's manager testified that two who had signed application cards stated to him they did not want to be members of the Union and that one whose signature appeared on a card, testified he was not a member. These objections go to the credibility and weight of the testimony and are matters for the determination of the Board. There is other evidence in the record tending to support the Board's finding that the Union had been designated by a majority of the unit. Its finding in that respect is supported by substantial evidence. National Labor Relations Board v. Louisville Refining Company, 6 Cir., 102 F.2d 678.

Some of respondent's employees had belonged to the Union for several years before it was selected as a bargaining agency. From October 24, 1935, the plant operated under the management's written declaration of policy, copy of which was furnished plant employees. In November, 1936, the Union, as bargaining representative for the employees, submitted a written contract to respondent's officers which was rejected by its plant manager and there is substantial evidence that he gave as his reason that it was not the policy of the company to recognize the Union and there is also substantial evidence that about this time respondent's president stated that he would not recognize the American Federation of Labor as a bargaining representative but would negotiate with a committee of the employees.

In April, 1937, respondent's president presented to the employees' committee, a bargaining agreement without mentioning the Union, and when it insisted on the name of the Union being inserted, he stated that before doing so, he would shut down the shop. As a counterproposal, he offered to increase wages five percent which the committee accepted. On June 14, 1937, he informed the committee that a tentative increase in wages provided in the April agreement would be impossible, but he would make every effort to provide steady work and there would be no shut down for inventory. He stated, however, if there were too much labor unrest, the plant would be shut down temporarily or possibly permanently. The Union committee then called in a representative of the American Federation of Labor to assist in negotiating with respondent and on July 27, 1937, the president of the local union posted a notice on the plant bulletin board announcing a meeting for that afternoon at which such representative would be present. About an hour later respondent's manager posted a notice on the board that the plant would close that night for inventory, pursuant to a proposed sale or lease, and that the employees would be advised later when to report back for work. The next day the Union endeavored without success to arrange a conference between the presi-

dent of respondent and the representative of the American Federation of Labor.

Prior to May, 1937, the respondent was negotiating with the Robin Hood Woods Products Company of California for a sale or lease of part of its plant and on July 27, 1937, it was notified that the contract had been closed and that the Company was shipping machinery and equipment to Piqua, Ohio, for installation. On July 27, 1937, respondent closed its plant for inventory pursuant to this agreement and the Union employees began to picket it that afternoon and so continued.

On August 3, 1937, respondent mailed to all of those who were its employees on July 27, 1937, a notice that inventory would be completed August 4, 1937, and the plant re-opened on August 5, at the regular time. It re-opened on that date but none of the employees began working. Some started into the plant but after being approached by members of the picket line, turned back.

On August 8, 1937, respondent's president asked a committee of its employees to meet with him, but informed them before negotiations commenced that he would not recognize or deal with the Union. He promised continuance of the 40-hour week and a raise in wages when profits permitted if they would return to work. The Board's finding that the respondent refused to bargain with the Union is supported by abundant evidence. National Labor Relations Board v. Griswold Mfg. Co., 3 Cir., 106 F.2d 713.

Respondent does not seriously question this finding but insists it was not compelled to bargain collectively until the Board had first determined the appropriate unit of employees for that purpose and had designated the bargaining agency under Section 9(a) and (b) of the Act, 29 U.S.C.A. § 159(a, b). This position is untenable.

The National Labor Relations Act is in no way concerned with mediation or arbitration, nor with wages, hours or working conditions. Its sole purpose is to encourage the practice and procedure of collective bargaining and to protect the workers in the exercise of full freedom of association, self-organization and designation of representatives. National Labor Relations Board v. Jones-Laughlin Steel Co., 301 U.S. 1, 42, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352.

In the preamble to the Act, its purpose is declared to be "to eliminate the causes of certain substantial obstructions to the free flow of commerce * * * by encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing * *." 29 U.S.C.A. § 151. To make this declared policy effective, the Act imposes on the Board two principal functions; the first defined by Section 9, headed "Representatives and Elections" is certification of the name or names of representatives for collective bargaining of an appropriate unit of employees after appropriate investigation and a hearing; the second, defined by Section 10, headed "Prevention of Unfair Labor Practices" is the prevention by order of the Board after a hearing and by further appropriate proceeding in court of the unfair labor practices set out in Section 8, one of which is the refusal of an employer to bargain with the employees' representative of the appropriate unit.

[10] The Act assumed the existence of a quasi or constructive contract whereby a legal obligation was imposed on the employer, even against his intention, to deal with an appropriate unit of his employees, through their chosen representative concerning the matters referred to in the statute and the Board is without jurisdiction until the employer has violated his obligation and a complaint has been lodged with the Board pursuant to Section 10(c) of the Act. The employer acts at his peril in refusing to recognize a duly selected bargaining agency of an appropriate unit of his employees unless the facts show that in the exercise of reasonable judgment he lacked knowledge of the appropriateness of the unit or the selection of the majority representative.

The respondent makes no contention that the unit found by the Board which existed at the beginning of the controversy was not an appropriate one for collective bargaining nor does it question the right of the Union to act as a bargaining representative if selected by a majority of the unit.

The Board in its cease and desist order directed the respondent to refrain from interfering with, restraining or coercing its employees in their right to self-organization under Section 7 of the Act, 29 U.S.C.A. § 157. It also directed it upon request

to bargain collectively with the Union. Respondent attacks this part of the order on three grounds; first, that there is no charge laid in the complaint that it engaged in an unfair labor practice within the meaning of Section 8(1) of the Act; second, that the facts as found by the Board constituted a violation of Section 8(5) and not of 8(1) and third, that its refusal to bargain with the designated representative as found by the Board occurred on August 8, 1937, which was after the verification of the charge on which the Board issued its complaint.

■ Section 10(b) of the Act, 29 U.S. C.A. § 160(b) provides that, if any person has engaged in or is engaging in any unfair labor practice defined by the Act, the Board shall issue and cause to be served upon the offender a complaint stating the charges which may be amended by the Board in its discretion at any time prior to issuance of an order based thereon. The person complained of is accorded the right to file an answer to the original or amended complaint and to appear in person or otherwise and give testimony at a time and place fixed in the complaint. The Board must conform to the standards established in the Act. Myers v. Bethlehem Corporation, 303 U.S. 41, 49, 58 S.Ct. 459, 82 L.Ed. 638.

An examination of the complaint shows respondent was properly charged with violation of Section 8(1) and there is substantial evidence to support this charge. It, therefore, follows that the application of Section 8(5) becomes immaterial.

■ The sole function of the complaint is to advise the respondent of the charges constituting unfair labor practices as defined in the Act, that he may have due notice and a full opportunity for hearing thereon. The Act does not require the particularity of pleading of an indictment or information, nor the elements of a cause like a declaration at law or a bill in equity. All that is requisite in a valid complaint before the Board is that there be a plain statement of the things claimed to constitute an unfair labor practice that respondent may be put upon his defense. Texas & Pacific Railroad Co. v. Interstate Commerce Commission, 162 U.S. 197, 215, 16 S.Ct. 666, 40 L.Ed. 940; Cincinnati, Hamilton & Dayton Railway Company v. Interstate Commerce Commission, 206 U.S. 142, 149, 27 S.Ct. 648, 51 L.Ed. 995.

■ The complaint here under consideration stated clearly that labor practices denounced by the Act were being pursued by respondent which would continue unless a cease and desist order was issued. The complaint did not set out the particular facts constituting the unfair labor practice as finally found but this was not necessary as all parties to the proceedings knew its basis.

■ The order of the Board was prospective in operation, not retroactive. Pennsylvania Co. v. United States, 236 U.S. 351, 361, 35 S.Ct. 370, 59 L.Ed. 616; National Labor Relations Board v. Mackay Co., 304 U.S. 333, 351, 58 S.Ct. 904, 82 L.Ed. 1381.

In considering whether the complaint is sufficient to support the order of the Board, it is necessary to bear in mind the nature of the proceedings under review, which is preventive, not punitive, and taken in the interest of the general public. The order complained of does not afford compensation for any injury alleged to have resulted from the matter charged. The National Labor Relations Act is a new device in administrative machinery introduced by the Congress in the hope of eliminating labor unrest and maladjustment in industry.

■ Our conclusion is that while the order may have been technically outside the issues raised by the pleadings, it was still germane to the subject matter before the Board. The real question before it and in the minds of all the parties was whether the respondent was engaged in unfair labor practices denounced by the National Labor Relations Act. New York Central & H. Railroad Co. v. Interstate Commerce Commission, C.C., 168 F. 131.

The complaint filed was sufficiently definite to support evidence of unfair labor practices after the verification of the charge. There is substantial evidence to sustain the findings and the order of the Board. N.L.R.B. v. Mackay Company, supra. A decree for enforcement will issue in conformity with the prayer of the petition.

ARANT, Circuit Judge (dissenting in part).

In this case, respondent's refusal to bargain collectively was not due to doubt as to either the bargaining unit or agency. On the contrary, there was evidence to

show that respondent had stated that it would deal with no labor union. Hence, I agree with the majority that respondent's contention that it was not obligated to bargain collectively until the unit and agency had been determined by the Board is entirely without merit. National Labor Relations Board v. Remington Rand, Inc., 2 Cir., 94 F.2d 862; National Labor Relations Board v. Biles Coleman Lumber Co., 9 Cir., 98 F.2d 18.

I also agree that an employer does not act at his peril in refusing to bargain with an agency of an employee unit if he has a reasonable and honest doubt either that the unit is appropriate or that the agency is a majority representative. See N.L.R.B. v. Remington Rand, Inc., supra; Black Diamond S. S. Corp. v. National Labor Relations Board, 2 Cir., 94 F.2d 875; National Labor Relations Board v. Union Pacific Stages, Inc., 9 Cir., 99 F.2d 153.

The Board charged that respondent violated Section 8(1) and (5), 29 U.S.C.A. § 158(1 and 5) by refusing to bargain collectively, and Section 8(1) and (3) by demoting Cline because of union activities.

As to the latter respondent filed answer and was heard; and both the trial examiner and the Board thought the evidence insufficient to support the charge that respondent had been guilty of any unfair labor practice in its dealings with Cline.

The Board's finding and conclusion of law that respondent violated Section 8(5) by refusing to bargain collectively are unexceptionable; that unfair labor practice was charged in the complaint, respondent answered, had a chance to be heard, and there was ample evidence to support the Board's finding and conclusion of law. I agree with the majority that the Board's order should be enforced insofar as it is based on a violation of Section 8(5). N.L.R.B. v. Remington Rand, Inc., supra; N.L.R.B. v. Biles Coleman Lumber Co., supra.

In view of the fact that respondent was exonerated of any unfair labor practice in its dealings with Cline, its refusal to bargain collectively was the only remaining act the Board had charged as a violation of Section 8(1).

Nevertheless, the Board's fifth conclusion of law is as follows: "The respondent, by interfering with, restraining, and coercing its employees in the exercise of the rights guaranteed in Section 7 of the Act, has engaged in and is engaging in unfair labor practices within the meaning of Section 8(1) of the Act."

This conclusion of law was based on a finding that respondent had "interfered with, restrained and coerced its employees in the exercise of their right to self-organization guaranteed in Section 7 of the Act," by its consistent efforts to discourage membership in the Union, and by shutting down for inventory on July 27, neither of which was charged in the complaint. If the Board intended to consider respondent's effort to discourage membership in the union as an unfair labor practice, in addition to the refusal to bargain collectively, which was separately and specifically charged and found to be a violation of Section 8(5), I am of the opinion that the Board should have given such notice thereof as is contemplated by the Act. And I think it is entirely clear that it was improper for the Board to find, when it had not so charged, that respondent's shut-down for inventory was an unfair labor practice. See National Labor Relations Board v. Mackay Radio & Telegraph Co., 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381; Globe Cotton Mills v. National Labor Relations Board, 5 Cir., 103 F.2d 91. Respondent could not have known, prior to the Board's findings as to these matters, that they were being considered as violations of Section 8(1). Cf. N.L.R.B. v. Mackay Radio & Telegraph Co., supra.

While I agree with the majority that the niceties and precision of pleading required in criminal proceedings and civil suits are not required in procedure under the Act, I believe it clear, from the broad power conferred upon the Board to amend its complaints, that the Congress did not intend to empower it to find an employer guilty of any unfair labor practice without giving him reasonable notice and a fair opportunity to defend himself.

I cannot believe that the most ardent sympathizer with labor's cause, if thoughtful, would approve a departure from the Act so unessential to the protection of labor and so dangerous in its implications as is the approval of an order of the Board based upon a finding of an unfair labor practice that was never charged and as to which the employer could not have had the opportunity provided for in Section 10(b) to file answer and "appear in person or otherwise and give testimony at the time and place fixed in the complaint."

Moreover, I am not convinced that a mere refusal to bargain collectively, which is a violation of Section 8(5), is necessarily a violation of Section 8(1). See N.L.R.B. v. Remington Rand, Inc., supra. Cf N.L.R.B. v. Biles Coleman Lumber Co., supra. But, if I am mistaken as to this, it is my opinion that the Board was justified in holding that respondent violated Section 8(1) only in the manner charged, whether formally or otherwise. The Board issued a sweeping cease and desist order in the combined language of Sections 8(1) and 7 of the Act and then ordered respondent to post notices in its plant, and maintain them for thirty days, that it will cease and desist in the manner specified in the Board's order, which was as follows:

"1. Cease and desist from:

"(a) Refusing to bargain collectively with Federal Union Local 18787, as the exclusive representative of all its production and maintenance employees, except clerical and supervisory employees;

"(b) In any other manner interfering with, restraining, or coercing its employees in the exercise of their rights to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, or to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection, as guaranteed in Section 7 of the Act."

The Supreme Court of the United States has recently held that the Board may require an employer to post notices that he will cease and desist from unfair labor practices with which the employer has been charged and found guilty, when the employees need assurance from their employer that they may exercise their legal rights without incurring his disfavor. National Labor Relations Board v. Falk Corp., 60 S.Ct. 307, 84 L.Ed. ——, decided January 2, 1940. I am unable to see how the posting of notices, in the form ordered by the Board in this case, is essential to the employees' knowledge that the full and free exercise of their rights will bring them into no disfavor. Nor am I convinced that the Supreme Court intended to establish a rule of law applicable without regard to the facts of each case.

I share the doubt that has been expressed as to the power of the Board to compel every employer found guilty of an unfair labor practice to post a notice which contains an admission that he has violated the law. See National Labor Relations Board v. A. S. Abell Co., 4 Cir., 97 F.2d 951; National Labor Relations Board v. Louisville Refining Co., 6 Cir., 102 F.2d 678; Mooresville Cotton Mills v. National Labor Relations Board, 4 Cir., 97 F.2d 959; National Labor Relations Board v. Eagle Mfg. Co., 4 Cir., 99 F.2d 930; Virginia Ferry Corp. v. National Labor Relations Board, 4 Cir., 101 F.2d 103; National Labor Relations Board v. Nebel Knitting Co., Inc., 4 Cir., 103 F.2d 594; Burlington Dyeing & F. Co. v. National Labor Relations Board, 4 Cir., 104 F.2d 736. But see Clover Fork Coal Co. v. National Labor Relations Board, 6 Cir., 97 F.2d 331; National Labor Relations Board v. Union Pacific Stages, Inc., 4 Cir., 99 F.2d 153. But, whether this is so or not, I cannot assent to a holding that an employer can be required to post a notice in which he admits violation of every inhibition of Section 8(1) when it has never been charged that he violated more than one of them.

Hence, I must dissent from so much of the majority holding as approves the Board's order based on its finding of fact and conclusion of law that Section 8(1) was violated.