## NATIONAL LABOR RELATIONS BOARD v. YALE & TOWNE MFG. CO.

### No. 311.

Circuit Court of Appeals, Second Circuit.

Aug. 16, 1940.

Charles Fahy, Gen. Counsel, Robert B. Watts, Associate Gen. Counsel, and Laurence A. Knapp, Asst. Gen. Counsel, all of Washington, D. C., Robert H. Kleeb, of Pittsburgh, Pa., and Richard C. Barrett and Morris L. Forer, both of Washington, D. C., for petitioner.

Porter & Taylor, of New York City (Louis H. Porter and F. Carroll Taylor, both of New York City, of counsel), for respondent.

Before SWAN, CHASE, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

The respondent is a Connecticut corporation which is concededly subject to the provisions of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. At its plant in Stamford, Connecticut, it employs approximately 3,400 persons. During the spring of 1937 two rival labor organizations were formed and competed for membership at the Stamford plant. One union was Local 227 of United Electrical & Radio Workers of America, affiliated with the C. I. O.; the other was the Yale & Towne Employees' Association, an unaffiliated union. For brevity the former will be referred to as United and the latter as Association. On June 3, 1937, by agreement between the two unions and the respondent an election was conducted by the Board's representatives to ascertain which union was entitled to recognition as the bargaining agent of respondent's employees. As a result of the election the Board certified Association as the bargaining agent. Thereupon United filed charges of unfair labor practices, and the Board, on July 13, 1937, issued its complaint against the respondent. The complaint charged (a) that during the last two weeks of May, 1937, four employees (by amendment increased to five) were discharged because of their activities in United, and nine employees were laid off for similar reasons; (b) that the respondent engaged in a systematic effort to spread a false and malicious rumor with intent to influence the June 3rd election, and (c) that "by other acts" the respondent interfered with, restrained and coerced its employees in the exercise of their rights to self organization. Hearings were had before a trial examiner, whose report was lodged with the Board in October, 1937. The Board's decision was not rendered until January, 1939. Its petition for enforcement was filed in this court in August, 1939, and the printed record in April, 1940. The record is very voluminous, containing more than 3,700 pages.

The Board's decision sustained the charge of wrongful discharges and layoffs in only three instances; it dismissed the charge of a systematic effort to spread a false rumor; and it found that the respondent had interfered with, restrained and coerced its employees in numerous respects not particularized in the complaint, namely: interfering with their free choice of representatives at the June election; contributing support to the Association; discriminating between the Association and United in their organizational activities; posting the notice of May 13th; employing persons to investigate union activities among the employees; distributing a magazine to a selected group of the employees; and making remarks, through the respondent's supervisors, which were derogatory to United. Upon the basis of its findings of fact the Board concluded that the respondent was engaging in unfair labor practices within the meaning of section 8(1) and (3) of the Act and issued its order, the text of which is printed in the margin.[1] The petitioner contends that

[1] "1. Cease and desist from:

"(a) Discouraging membership in United Electrical & Radio Workers of America, Local No. 227, or any other labor organization, by discriminating in regard to hire or tenure of employment or any term or condition of employment;

"(b) In any other manner interfering with, restraining, or coercing its employees in the exercise of the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, or to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection, as guaranteed in Section 7 of the National Labor Relations Act.

"2. Take the following affirmative action which the Board finds will effectuate the policies of the Act:

"(a) Offer to Julia Kovacs, Pauline Sabaloff, and James Sansone immediate and full reinstatement to their former positions, without prejudice to their seniority and other rights and privileges;

"(b) Make whole Julia Kovacs, Pauline Sabaloff, and James Sansone for any loss of pay they have suffered by reason of the respondent's discrimination in regard to hire and tenure of employment, by payment to each of them, respectively, a sum of money equal to that which he would normally have earned as wages from the date of his discharge to the date of the respondent's offer of reinstatement, less his net earnings during said period; deducting, however, from the

this court should enforce the order without modification; the respondent that no part of the order can stand because none of the findings of fact upon which it is based is supported by substantial evidence.

It must be conceded that paragraph 1(a) of the order should be enforced if the findings as to discriminatory discharges are supportable. We must, therefore, look to the evidence, but it is unnecessary to recite it in full detail.

■ The discharge of Sansone: He was a skilful employee of long service and of excitable temperament. On the afternoon of May 20, 1937, he had an altercation with Lusky, a foreman in another department, who ridiculed Sansone's membership in United. On the following morning Sansone's foreman, Karukas, took him to task for his altercation with Lusky and warned him against union activities in his work room. There is a dispute in the testimony as to just what was said, but it is evident the conversation became heated. Karukas says that Sansone asked for his "check," which Karukas understood to mean an exit check; and when this was given him Sansone tore it up and asked for his "green check," which means a discharge. Sansone denies that he asked for either check, but admits that he later accepted an exit check in order to consult an attorney. In the afternoon Sansone was handed a green check by Karukas and, when he said he was being fired for union activities, Karukas made no reply. The green check stated that Sansone was leaving of his own accord, having "asked for his green check," and added that he was not worthy of re-employment because he was "very insubordinate." Before the green check was issued an investigation of the incident was conducted by Williams, director of industrial relations. He reported to manager Plumley, recommending "disciplinary" action because of Sansone's "insubordination." The Board accepted Sansone's testimony that he did not ask for a green check and his denial that he had been insubordinate to his foreman. It concluded that he was not discharged for that reason, and that Williams' investigation was not bona fide since Sansone was not called to give his version of the incident. It found that the actual reason for his discharge was because he had joined and assisted United. Since the respondent attempted to justify the termination of Sansone's employment on two inconsistent theories (resignation and discharge for insubordination), neither of which was credited by the Board, the Board sought to find the respondent's real motive. There is evidence in the record that the respondent favored the Association over United, and we cannot say that the inference the Board drew as to the reason for discharging Sansone is so unreasonable as to be wholly unsupported by the record.

The discharges of Kovacs and Sabaloff: These two girls joined United in April, 1937, and actively engaged in organizing the other employees who worked in the same room. They were both discharged or laid off by their foreman on May 14th. Each received a green check stating that she was laid off "due to the lack of work and stopping the backing off of keys which this girl did," and noting that she was worthy of re-employment. But neither of the girls was working at "backing off" at the time of her discharge, and there was no claim of lack of work of the kind she was doing. Moreover, other employees continued to do backing off after the discharge of Kovacs and Sabaloff, and two of them were junior in service to the discharged girls. As in the case of Sansone, the Board found that they were discharged because they joined and assisted United. Slawson, the foreman, testified that he did not lay them off because of their union activities, that "it didn't interest me"; but it may be inferred from his testimony at folio 7659 that he knew of their membership in United. We cannot say that the

amount otherwise due to each of the said employees, monies received by said employees during said period for work performed upon Federal, State, county, municipal or other work relief projects; and pay over the amount so deducted to the appropriate fiscal agency of the Federal, State, county, municipal, or other government or governments which supplied the funds for said work relief projects;

"(c) Post immediately notices in conspicuous places in its plant stating that the respondent will cease and desist in the manner aforesaid, and maintain said notices for a period of sixty (60) consecutive days from the date of posting;

"(d) Notify the Regional Director for the Second Region within ten (10) days from the date of this Order what steps the respondent has taken to comply herewith."

Board's inference as to the reasons for their discharge or lay off is not a permissible inference under the evidence.

■ Paragraph 1(b) of the order forbids any other form of interference with the employees' right to self organization. The respondent contends that the complaint is insufficient to support findings of interference other than those relating to the discriminatory discharges. Evidence as to these other matters was offered by the Board to show the "historical background of the labor organization activities" within the respondent's plant. It was later used as the basis for findings of unfair labor practices not specifically alleged in the complaint. The complaint, however, did allege violations of section 8(1) of the Act, 29 U.S.C.A. § 158(1) "by other acts" in addition to those particularized. No request for a bill of particulars or for an adjournment was made, and the respondent put in evidence to meet that introduced by the Board with respect to the violations not specifically alleged in the complaint. There does not seem to have been any surprise or lack of opportunity for the employer to make its defense. Hence it is not apparent that the respondent was prejudiced by lack of particularity in the complaint. See Swift & Co. v. National Labor Relations Board, 10 Cir., 106 F.2d 87, 91; National Labor Relations Board v. Piqua Munising W. Products Co., 6 Cir., 109 F. 2d 552, 557; National Labor Relations Board v. Remington-Rand, Inc., 2 Cir., 94 F.2d 862, 873, certiorari denied, 305 U.S. 576, 585, 58 S.Ct. 1046, 82 L.Ed. 1540.

■ It is also contended that all of the findings relating to the forms of interference not particularized in the complaint have no substantial support in the evidence. It is true that some of the findings cannot be sustained. The one relating to the notice of May 13th is plainly without substantial support in the evidence, and we entertain grave doubt whether the finding, based solely on the Twigg incident, of interference with the June election is supportable. But to sustain paragraph 1 (b) of the Board's order, it is not necessary to sustain all of its findings; any one of them will suffice. The finding of interference "by allowing the Association freedom in its organizational activities while restricting the activities of the United" is one which we clearly could not override upon this record. This is enough to support paragraph 1(b) and we think it unnecessary to discuss the other findings.

■ We pass now to the affirmative provisions of the Board's order. Immediately after the issuance of the order, the respondent moved to reopen the record to adduce evidence as to matters occurring subsequent to the hearings. This motion was denied. From the affidavit filed in support of the motion it appears that Kovacs and Sabaloff were re-employed by the respondent on October 22, 1937. They were put to work in a different department. Kovacs worked steadily until December 10, 1937 when she and others were laid off for lack of work. Sabaloff left the plant at noon on the date of her re-employment and never returned, but later sent someone to collect her half day's wages. The affidavit also states that a change of operating conditions effected about March 1, 1938, has done away with the work of lacquer spraying which Sansone formerly performed. If these assertions are true, and the petitioner's brief does not question them, the enforcement order to be entered by this court should take note of them by appropriate provisions. If the re-employment given to Kovacs and Sabaloff was equal in wages and character of work to the positions formerly held by them the respondent would seem to have performed its full duty of reinstatement; and its duty to make good back wages would end with October 22, 1937. What the respondent's duty to Sansone may be in view of the changed operating conditions we do not now attempt to say.

Paragraph 2(b) of the order must be modified to conform to our decisions in National Labor Relations Board v. Leviton Mfg. Co., 2 Cir., 111 F.2d 619, and Phelps Dodge Corp. v. National Labor Relations Board, 2 Cir., 113 F.2d 202, decided July 11, 1940; and paragraph 2(c) must be modified to conform to our decision in Art Metals Const. Co. v. National Labor Relations Board, 2 Cir., 110 F.2d 148.

If the parties cannot agree on the form of the enforcement decree to be entered in conformity with this opinion, each may submit a draft of the decree desired.

CLARK, Circuit Judge (concurring).

Though the point does not affect the result we have reached, I do not feel I can say that, viewing the total picture presented by all the evidence, the Board's finding as to the notice of May 13 is plainly without substantial support in the evidence.