PUERTO RICO LABOR RELATIONS BOARD, Petitioner, v. LÍNEA SUPREMA, INC., Respondent.

No. JRT-62-3.    Decided January 27, 1964.

822

*J. B. Fernández Badillo,* Solicitor General, *José Orlando Grau,* and *J. F. Rodríguez Rivera* for petitioner. *Miguel A. Muñoz* for respondent.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE HERNÁNDEZ MATOS delivered the opinion of the Court.

This case arises out of a petition urging us to enforce an order of the Labor Relations Board of Puerto Rico against Línea Suprema, Inc., respondent herein.[1]

---

[1] The respondent, its officers, agents, supervisors, successors and assignees are thereby ordered:

"1. To cease and desist from:

"(a) In any manner whatsoever interfering, restraining, exercising coercion, or attempting to interfere, restrain or exercise coercion upon its employees in the exercise of the rights to organize themselves; to constitute, affiliate with or aid labor organizations, bargain collectively through representatives chosen by them, and engage in concerted activities for the purpose of bargaining collectively, or some other purpose of mutual aid or protection guaranteed to them by § 4 of the Act.

"(b) In any manner whatsoever encouraging, discouraging or attempting to encourage or discourage membership in any labor organization of its employees by discrimination in regard to hiring, firing

On November 30, 1959 the Union of Workers UPWA-AFL-CIO filed a charge before the Board against Línea Suprema, Inc., for violation of subds. 1(a) and (c) of § 8 of the Labor Relations Act (29 L.P.R.A. § 61 *et seq.*). On March 2, 1960 the Board issued a complaint alleging the discriminatory discharge of employees Salvador López, Ramón Rodríguez, and Aureliano Rodríguez, in addition to certain acts of interference and coercion allegedly performed by respondent.

Public hearings were held in the period comprised between March 24 and April 6, 1960. The Trial Examiner who presided at the hearings ceased in his functions prior to the preparation of the corresponding report.[2] Thus, on

---

or in connection with the tenure of employment or other terms or conditions of employment.

"2. To take the following affirmative action which in our opinion effectuates the purposes of the Act:

"(a) To offer immediate reinstatement in their former employments, under conditions of employment equal to those of its other employees of like category, to its employees Salvador López and Ramón Rodríguez, and if these employments do not exist, to others substantially equivalent to those which they discharged prior to their discharge, and to compensate them for the losses which they may have sustained in their income by the refusal to employ them from the time of their discharge to November 3, 1960, the date of our Draft of Decision and Order in the case, and similarly from the date of this Order to the date offer of employment is made to them. There shall be paid them a sum equal to that which they would have normally received after deducting the net income which they had or would have received during such periods.

"(b) To post forthwith in conspicuous places of its business copies of the Notice attached as Appendix 'A' to this Decision and Order and made a part hereof, for a period of not less than thirty (30) consecutive days counted as of the posting date.

"(c) To serve notice on the Chairman of the Board within ten (10) days from the date hereof of any action taken by respondent to comply herewith." (The Notice attached as Appendix "A" contains essentially the terms comprised in the Order.)

[2] The Trial Examiner resigned his office on the Labor Relations Board in order to accept the position of Assistant Secretary of Public Education. See Order of the Board of September 19, 1960 (case No. CA-2283).

September 19, 1960 the Board issued an order to transfer the case to itself. On November 3, 1960 it issued a Draft of Decision and Order setting forth its Proposed Findings of Fact and Conclusions of Law and its Proposed Order. It concluded in said Draft of Decision and Order that respondent had not committed any violation of the Labor Relations Act of Puerto Rico.

Due opportunity was granted to the parties to submit objections to the proposed order and in due time briefs were filed both in support of and in opposition to the said order.

After considering all the documents filed, on August 31, 1961 the Board issued its Decision and Order No. 254 setting aside the conclusions contained in the tentative Draft of Decision and Order. Lastly, it concluded that respondent had arbitrarily discharged its employees Salvador López and Ramón Rodríguez, thereby violating the provisions of § 8, subds. 1(a) and (c), of the statute. Regarding employee Aureliano Rodríguez, it determined that his discharge was not discriminatory and ordered the dismissal of the corresponding averments of the complaint.

In its lengthy answer to the petition filed in this Court, respondent set up the following defenses:

FIRST: That the complaint issued by the Board at the instance of the Union does not state facts to justify the granting of a remedy. SECOND: That the Union did not allege facts to justify any right on its part to defend itself against a case of this nature. THIRD: That it does not appear from the record that the Union had been certified as a labor entity to bargain collectively in the name and on behalf of respondent's employees, nor does it appear that it complied with the requirements of the Act to that effect.

By its FOURTH defense it challenges the action of the Board in setting aside its Draft of Decision and Order.

■ ■ The first defense is untenable in the light of the criterion which must prevail whenever it is sought to pass on the sufficiency of a complaint issued by the Labor Relations Board charging the commission of unfair practices. That criterion cannot be the same as when an action is filed between private individuals in which private rights are dilucidated. It should be borne in mind that the proceeding commenced with the filing of charges with the Board and the subsequent issuance of a complaint by the latter is of a remedial nature which is made in the general interest. "The sole function of the complaint is to advise the respondent of the charges constituting unfair labor practices as defined in the Act, that he may have due notice and a full opportunity for hearing thereon. The Act does not require the particularity of pleading of an indictment or information, nor the elements of a cause like a declaration at law or a bill in equity. All that is requisite in a valid complaint before the Board is that there be a plain statement of the things claimed to constitute an unfair labor practice that respondent may be put upon his defense. *Texas & Pacific Railroad Co.* v. *Interstate Commerce Commission*, 162 U.S. 197, 215, 16 S.Ct. 666, 40 L.Ed. 940; *Cincinnati, Hamilton & Dayton Railway Co.* v. *Interstate Commerce Commission*, 206 U.S. 142, 149, 27 S.Ct. 648, 51 L.Ed. 995." *N.L.R.B.* v. *Piqua Munising Wood Products Co.*, 6 L.R.R.M. 828, 833, 109 F.2d 552, 557 (1940); *Consumers Power Co.* v. *N.L.R.B.*, 6 L.R.R.M 849, 853–54, 113 F.2d 38, 43 (1940).

The same liberal criterion which recognizes that the pursuit of the broad purposes of the Act should not be hindered by procedural technicalities is consecrated in Regulations No. 2, issued by the Board (ch. 3, subch. 64, 29 R.&R.P.R.). It provides as follows in § 31 thereof:

"Sections 64–1 to 64–33 of this title shall be liberally construed to effectuate the purposes and provisions of the Act."

■ With this in mind, an examination of the averments of the complaint has convinced us that it is sufficient.

■ Respondent is not right either as to its second. and third defenses. It will suffice to repeat part of the citation from *Nat. Licorice* v. *Labor Board*, 309 U.S. 350, 362–65 (1940), which was made in *Quiñones* v. *Labor Relations Board*, 69 P.R.R. 551, 554 (1949):

"The proceeding authorized to be taken by the Board under the National Labor Relations Act is not for the adjudication of private rights . . . . It has few of the indicia of a private litigation and makes no requirement for the presence in it of any private party other than the employer charged with an unfair labor practice. The Board acts in a public capacity to give effect to the declared public policy of the Act . . . .

"Here the right asserted by the Board is not one arising upon or derived from the contracts between petitioner and its employees. The Board asserts a public right vested in it as a public body, charged in the public interest with the duty of preventing unfair labor practices."

■ In the case under consideration the Board also acts in a public capacity to give effect, in the public interest, to the purposes of the Act without the appearance of the Union having been necessary for the Board to determine whether there was a violation of any of the provisions of the Act. The Union did not therefore have any right to justify, nor was it essential that it be certified as a labor entity. As correctly maintained by the Solicitor General: "The Union could not allege any right in this proceeding—except those to which it could be entitled in the adjudication of the public rights—because the Board would not have been the proper forum to adjudicate it." (Petitioner's reply brief, p. 6.) In other words, the rights of the Union in this proceeding are only those provided in the Act and the Board is the one bound to invoke them by virtue of the same Act. Section 7 (a) of the Act (29 L.P.R.A. § 68) reads as follows:

"The Board shall have power, in the manner hereinafter provided, to prevent any person from engaging in any of the unfair labor practices . . . . *This power shall be exclusive and shall not be affected by any other method of adjustment or prevention.*"

The fourth defense challenges the action of the Board in setting aside its Draft of Decision and Order of November 3, 1960, by the Decision and Order which we are now urged to enforce. It also discusses other questions to which we shall refer later.

■ We do not find that the Board acted incorrectly. Article II, § 9, of Regulations No. 2 of the Board[3] empowers the Board, during the hearing, upon the conclusion thereof and prior to the report of the Trial Examiner, to transfer the case to itself by special order. It was by virtue of the order transferring the case that the Board prepared its Draft of Decision and Order. However, the said draft did not constitute the final disposition of the case. It served as the report which is ordinarily submitted by the Trial Examiner. Thus, after giving due opportunity to the parties to present their objections to the draft and on the basis of the complete record of the case, it could decide accordingly. Section 11 of art. II of the Regulations *supra* provides:

"Upon the expiration of the period for filing a statement of exceptions and brief, as provided in this section, the Board may decide the matter forthwith upon the record, or after oral argument; or it may reopen the record and receive further evidence before a member of the Board, or an official examiner; or it may close the case upon compliance with recommendations of the report of the official examiner; *or it may make other disposition of the case.*"

It was therefore empowered to decide finally in a manner other than that provided in the Draft.

---

[3] It corresponds to § 10 of the present Regulations.

■ Appellant maintains that the Board by its Order of August 31, 1961, gave legal effect and ratified the findings of fact and conclusions of law of its First Draft of Order. In support thereof it cites that part of the order which provides for back pay in favor of the employees "from the time of their discharge until November 3, 1960, corresponding to our Draft of Decision and Order in the case." It is not right. That provision of the order which excludes from the computation of the back pay the period comprised between the date of the report of the Trial Examiner dismissing the complaint (the date of the Draft of Decision and Order in our case) and the issue date of the final order directing the reinstatement, favors rather than prejudices it. Normally, the employee is entitled to back pay from the day of his discriminatory discharge to the day of offer of employment. However, on certain occasions such as in the present case there is justification for the remedial authority which permits the exclusion of the aforesaid period from the computation, on the ground that the employer has rested in good faith on the solution in his favor originally made of the case, in which case he could not have been expected to reinstate the employee in that period. The National Labor Board applies that criterion in *E. R. Haffelinger Co.*, 1 N.L.R.B. 760, 767 (1936). The exclusion of that period is due clearly to considerations of equity which are consonant with the remedial nature, though not punitive, which characterizes our Labor Relations Act. See *Rivera* v. *Labor Relations Board*, 70 P.R.R. 5, 13 (1949).[4] For an interesting discus-

---

[4] We should take notice, however, of the recent decision in *N.L.R.B.* v. *A.P.W. Products Co.*, 316 F.2d 899, of April 25, 1963, in which the National Board in overruling *Haffelinger* disapproved the remedial authority notwithstanding it had sanctioned it for about 26 years. The Board says that the rule laid down in *Haffelinger* "operated in the direction of benefiting the wrongdoer at the expense of the wronged—a result antiethical to the fundamental aim of the Board's remedial authority and powers." For

sion on this point, see 48 Yale L.J. 1265. As to other cases which have applied a method similar to that used in this jurisdiction, *N.L.R.B.* v. *Pyne Molding Corp.*, 226 F.2d 818, 37 L.R.R.M. 2007; *Banner Die Fixture Co.*, 115 N.L.R.B. No. 262, 38 L.R.R.M. 1149.

■ We are not asked to review the method employed by the Board in computing the back pay. We must accept it considering that the granting of that remedy is entrusted to the Board's wide discretion, in the absence of a showing of misuse of such discretion. *Phelps Dodge Corp.* v. *N.L.R.B.*, 313 U.S. 177, 198 (1941); *N.L.R.B.* v. *East Texas Steel Castings Company*, 255 F.2d 284 (1948); 48 Yale L.J., *supra* at 1273.

■ Lastly, attempts are made to challenge generally the findings of fact made by the Board in determining that respondent had engaged in unfair labor practices. We have made a careful examination of all the documents under our consideration, and find that there is sufficient evidence to support them. In view of this situation, we are not permitted to disturb them. In *Labor Relations Board* v. *Namerow*, 69 P.R.R. 77, 81 (1948), we said:

"We have not been vested with unfettered power to review the findings of fact of the Board. Section 9(2)(a) of the Act provides that 'The findings of the Board as to the facts, if supported by the evidence, shall be conclusive.' Only if there were no evidence in the record in support of the findings of fact of the Board, would we be authorized to hold as a matter of law that the findings of fact, and the order based thereon, could not stand."

■ Although we are conscious that there is conflicting evidence from which we may infer conclusions other than those of the Board, however, that is not our function. The

another case ratifying the new trend of the doctrine announced in *A.P.W. Products Co.*, see *Reserve Supply of L.I., Inc.* v. *N.L.R.B.*, 317 F.2d 785, of May 27, 1963. See, also, *Labor Relations Board* v. *Ceide, ante,* p. 659.

resolution of conflicting testimony concerning the discharge of employees and the drawing of inferences from facts established at the hearing "falls within the province of the Board, and we are not to pass on the credibility of the witnesses or reweigh the evidence. Our function is to take the record as a whole and enforce if we find substantial evidence to support the findings of the Board. *N.L.R.B.* v. *Ferguson*, 5 Cir., 1958, 257 F.2d 88; *N.L.R.B.* v. *Fox Manufacturing Company*, 5 Cir., 1956, 238 F.2d 211; *Universal Camera* v. *N.L.R.B.*, 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; and *N.L.R.B.* v. *Walton Manufacturing Co.*, 1962, 369 U.S. 404, 82 S.Ct. 853, 7 L.Ed.2d 829." *N.L.R.B.* v. *Transport Clearings, Inc.*, 311 F.2d 519, 523 (1962).

▆ Although ordinarily the decision of the Board is preceded by a report of the Trial Examiner who presided at the hearing of the case, the fact that there is no such report here should not alter the application of the principles announced. This is so if we consider the specialization and experience of that administrative agency to deal with these problems. On the contrary, it should serve as a basis in order that in our examination of the record as a whole we should be more strict than usual. We have borne that in mind. Even then, there is sufficient evidence in the case to uphold the conclusions of the Board.

The order issued will be enforced.