**NATIONAL LABOR RELATIONS BOARD ·
v. LUND et al.
No. 420.**

Circuit Court of Appeals, Eighth Circuit.

May 10, 1939.

Gerhard Van Arkel, of New Orleans, La. (Charles Fahy, Gen. Counsel, Robert B. Watts, Associate Gen. Counsel, and Laurence A. Knapp, Mortimer B. Wolf, and Louis Libbin, Attys. for National Labor Relations Board, all of Washington, D. C., on the brief), for petitioner.

Edward S. Stringer, of St. Paul, Minn. (Alexander E. Horn, of St. Paul, Minn., on the brief), for respondents.

Before STONE, WOODROUGH, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

The National Labor Relations Board has filed a petition in this court praying for the enforcement of its order of April 5, 1938, directed to the respondents. Both respondents resist the enforcement of the order and pray that it be vacated and set aside and the complaint upon which it is based be dismissed on the ground that the order is illegal, erroneous and contrary to law.

The Northland Ski Manufacturing Company (hereinafter referred to as Northland) is a Minnesota corporation engaged at its plant in St. Paul, Minnesota, in the manufacture, sale and distribution of skis, accessories, and toboggans. It is managed, operated and controlled by Christian A. Lund, who, together with the members of his family, own all of the capital stock. The C. A. Lund Company (hereinafter referred to as Lund) is the trade name of a business wholly owned by Christian A. Lund. Under this name Lund has a plant at the town of Hastings, Minnesota, about 20 miles from St. Paul, where products similar to those made at the Northland plant in St. Paul are manufactured and sold. It is conceded that the business at both plants involves interstate commerce.

The complaint, filed by the Board on June 21, 1937, is based upon amended charges filed by Woodenware Workers Union, Local 20481 (affiliated with the A. F. of L.). The complaint alleged that respondents had engaged and were engaging in unfair labor practices within the meaning of section 8(1), (2), (3) and (5), and section 2(6) and (7) of the National Labor Relations Act, 49 Stat. 449, Supp. III, Title 29 U.S.C. § 151 et seq., 29 U.S.C.A. § 151 et seq. The unfair labor practices alleged in the complaint occurred in part at each of the plants referred to.

Respondents filed separate answers denying the commission of the unfair labor practices, and a hearing was held before a trial examiner at Minneapolis, Minnesota, in July, 1937. An intermediate report was filed by the examiner to which exceptions were taken, and the Board on April 5, 1938, filed its findings of fact and entered its decision and order.

The Board in addition to certain jurisdictional matters found:

(1) That Lund at his Hastings plant dominated the formation and administration of the Independent Order of Ski Workers, an unaffiliated labor organization, and had contributed support to it, thereby interfering with, restraining and coercing his employees in the exercise of the rights guaranteed in section 7 of the Act, 29 U.S.C.A. § 157.

(2) That Lund, at his Hastings plant, discharged Sigurd P. Nesseth and Edward Hageman because they had joined and assisted the Woodenware Workers Union, thereby discriminating against his employees in regard to hire and tenure of employment and interfering with, restraining and coercing his employees in the exercise of rights guaranteed in section 7 of the Act; and that discrimination and coercion existed at both plants.

(3) That a strike in progress at the time of the hearing was caused by unfair labor practices.

(4) That all production employees of both respondents, excluding supervisory and clerical employees, constitute a unit appropriate for the purpose of collective bargaining and that said unit insures to employees of the respondents the full benefit of their right to self-organization and to collective bargaining and otherwise effectuates the policies of the Act.

(5) And that the Woodenware Workers Union was the duly designated representative of a majority of the employees in such appropriate unit on April

19, 1937, and at all times thereafter; and that thereafter respondents refused to bargain collectively with the Union as the exclusive representative of the employees in said unit.

Consistent with its findings of fact the Board concluded as a matter of law (1) that Lund has engaged in unfair labor practices within the meaning of section 8, subdivisions (1), (2), (3) and (5) of the Act; (2) that Northland has engaged in unfair labor practices within the meaning of section 8, subdivisions (1) and (5) of the Act; (3) that the production employees of Lund and Northland together, excluding supervisory and clerical employees, constitute a unit appropriate for collective bargaining; (4) that local 20481 of Woodenware Workers Union, having been selected as their representative by a majority of the employees in an appropriate unit, was, on April 15, 1937, and at all times thereafter has been, the exclusive representative of all the employees in such unit for the purpose of collective bargaining; and (5) that the unfair labor practices affect commerce within the meaning of section 2, subdivisions (6) and (7) of the Act.

Upon the basis of the findings of fact and conclusions of law the Board ordered: 1. That Lund cease and desist (a) from dominating or interfering with and from contributing support to any labor organization and (b) from discouraging membership in any labor organization of his employees by discharging or refusing to reinstate any of his employees or by discriminating in regard to hire and tenure of employment; 2. That both respondents cease and desist (a) from refusing to bargain collectively with Woodenware Workers Union, Local 20481, as the exclusive representative of their production employees, excluding supervisory and clerical employees, and (b) from interfering with, restraining or coercing their employees in the exercise of their rights of self-organization, to join labor organizations, to bargain collectively through representatives of their own choosing and to engage in concerted activities for such purpose; 3. That both respondents take the following affirmative action: (a) Upon request, bargain collectively with Woodenware Workers Union, Local 20481, as exclusive representative of the production employees; 4. That Lund take the following additional affirmative ac-

tion: (a) Offer Nesseth and Hageman immediate reinstatement and make them whole for loss of pay from March 23, 1937; (b) Upon application, offer employees who went on strike March 25, 1937, full reinstatement without prejudice to their rights, dismissing, if necessary, all persons hired since said date, and make whole such employees for loss of pay; (c) Withdraw recognition from the Independent Order of Ski Workers as representative of the employees and disestablish said Independent as such representative; (d) Post appropriate notices; and (e) Notify the regional director; 5. That Northland take the following additional affirmative action: (a) Upon application, reinstate employees who went on strike April 14, 1937, without prejudice to their rights and make them whole for loss of pay; (b) Post notices; and (c) Notify the regional director.

The respondents do not contest the finding of the Board that Lund dominated and interfered with the Independent Order of Ski Workers. The findings and order of the Board are assailed on the grounds that: (1) the finding that respondents coerced their employees in the exercise of their rights guaranteed by section 7 of the Act is not justified by the evidence; that (2) the finding that the production employees of both respondents, excluding supervisory and clerical employees, constitute a unit appropriate for collective bargaining is contrary to law; that (3) the finding that Nesseth and Hageman were discharged for union activities is not justified; and that (4) the order to reinstate strikers is not justified.

On the first question it is clear that there was ample evidence to support the finding of the Board that the respondents coerced their employees at both the St. Paul and Hastings plants to refrain from joining the A. F. of L. union and to join the Independent Order, or company union. The evidence supports the finding that Lund announced that he would never deal with the American Federation of Labor or have anything to do with it; that he would under no circumstances recognize it for collective bargaining. He and his agents and representatives did affirmatively assist in the organization of the company union and promptly recognized it as the representative of all the employees at the Hastings

plant. While the company union was in process of organization he closed the plant at Hastings under circumstances justifying the finding that his act was for the purpose of coercing his employees to join the company union. At about the same time he announced through his agents that he would remove his plant from Hastings rather than bargain with the A. F. of L. When in August, 1936, the A. F. of L. undertook to organize a local at the St. Paul plant there is substantial evidence that Lund opposed it and threatened to move the plant out of town if there were any labor troubles and that he declared that he would not deal with an outside union. In the face of such testimony this court is bound by the findings of the Board. National Labor Relations Board v. Pennsylvania Greyhound Lines, Inc., 303 U.S. 261, 58 S.Ct. 571, 82 L.Ed. 831, 115 A.L.R. 307; Consolidated Edison Company v. National Labor Relations Board, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. —.

The important question in this case is whether the employees in the St. Paul and Hastings plants as a whole constitute an appropriate unit under the Act for collective bargaining. The respondents say they do not constitute such a unit because there are two separate employers.

In April, May and June, 1937, representatives of the Union attempted to negotiate a contract with Lund covering rates of pay and conditions of labor at both plants, and Lund refused to negotiate with them on any basis. At the times of such refusal Lund did not base his decision on the ground that the unit was not an appropriate one. He then refused to treat with the Union under any circumstances. At the hearing, however, he testified that he was at all times willing to treat with the employees separately; and that the Independent Order, recognized by him, represented a majority of the employees of the Hastings plant.

As grounds for determining that the employees in both plants constitute an appropriate unit for collective bargaining the Board found that although owned by separate entities a unity of interest exists both in the management and among the employees. Christian A. Lund owns, and through his son as his agent, controls and manages the plant at Hastings. Through ownership of all the stock of Northland by himself and his family, and as president and manager of that company, he controls its activities. The business and operation of the two plants are similar. Workers are from time to time transferred from one plant to the other. Joint purchases of raw materials are sometimes received in one plant for both, and a portion is later shipped to the other. Products partially manufactured at one plant are not infrequently finished at, and shipped from, the other. Although each plant ordinarily uses its own trademark, products manufactured at one plant have been sold under the other's mark. The production employees of both plants in general do the same kind of work, requiring the same degree of skill. No appreciable wage differential exists between the two plants. All employees recognize the authority of Christian A. Lund.

The principal differences between the two plants are that the St. Paul plant makes higher-priced, better-grade products than are made at Hastings; it sells to retailers while Hastings sells to wholesalers; and snowshoes and hockey sticks are made at Hastings but not at St. Paul.

If Lund may deal with the employees of the two plants as separate units it is believed that collective bargaining would be a farce and that Lund, because of his hostility to the Union, would evade the purpose and intent of the law by transferring business from one plant to the other as his interest dictated according to the unit with which he could make the most favorable bargain. In other words Lund would be in a position where he could force competition between the two groups of his employees to their detriment and his gain.

The findings and conclusions of the Board plainly demonstrate the appropriateness of including the employees of both plants in one unit for purposes of collective bargaining, unless the law fails to authorize such joinder.

Counsel for the Board point out that section 2(2) of the Act, 29 U.S.C.A. § 152(2), provides that "The term 'employer' includes any person acting in the interest of an employer, directly or indirectly", and that paragraph (1) of the same section provides that "The term 'person' includes one or more individuals, partnerships, associations, corporations, legal representatives, trustees" etc. It is argued

that these provisions leave the Board free to group the employees of two nominally independent but in fact commonly controlled enterprises into a single unit for purposes of collective bargaining.

The respondents say that when properly construed section 2(1) and (2) of the Act is intended only to prevent an employer from evading the Act by acting through an agent.

Section 9(b) of the Act, 29 U.S.C.A. § 159(b), gives the Board power to "decide in each case whether, in order to insure to employees the full benefit of their right to self-organization and to collective bargaining, and otherwise to effectuate the policies of this Act [chapter], the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof."

■ Obviously all these provisions of the Act place a broad power of discretion, though not one that may be exercised arbitrarily, in the Board for the designation of an appropriate bargaining unit. In National Labor Relations Board v. Pennsylvania Greyhound Lines, Inc., 303 U.S. 261, 58 S.Ct. 571, 572, 82 L.Ed. 831, 115 A.L.R. 307, three related corporations were involved. The two respondents claimed that the third corporation was the "employer". There was only one group of employees. The court said, "Together, respondents act as employers of those employees * * * and together actively deal with labor relations of those employees." In Consolidated Edison Co. v. Board, supra, the order was directed at more than one legal entity. These entities consisted of the consolidated company and its affiliates, together constituting an integrated system. Each affiliated company was nevertheless a separate entity. It was not suggested in that case either by court or counsel that the fact that the employers were separate corporate entities was a fact affecting the jurisdiction of the Board. The inference to be drawn from these decisions of the Supreme Court and from the language of the statute is that, within the meaning of the Act, whoever as or in the capacity of an employer controls the employer-employee relations in an integrated industry is the employer. So interpreted it can make no difference in determining what constitutes an appropriate unit for collective bargaining

whether there be two employers of one group of employees or one employer of two groups of employees. Either situation having been established the question of appropriateness depends upon other factors such as unity of interest, common control, dependent operation, sameness in character of work and unity of labor relations. There may be others; but, unless the finding of the Board is clearly arbitrary upon the point, the court is bound by its finding. In the present instance the conclusion of the Board appears reasonable rather than arbitrary, and its finding is sustained.

■ Respondents' third contention is that the order to reinstate Nesseth and Hageman is not justified. They were president and secretary respectively of the union in process of organization at the time they were discharged on March 23, 1937. They were both active workers in the organization of the union and the Lunds, father and son, were actively opposing the union and actively favoring the organization of the Independent Order, a company union. The Lunds claim that Nesseth was discharged because on the morning of March 20th he broke a machine upon which he was working at the time and that Hageman was laid off because of lack of work. The question is one of motive, and the evidence to support the finding of the Board is necessarily circumstantial. We have examined the testimony carefully and have reached the conclusion that it is substantial and that we are not at liberty to reconsider the decision of the Board. Nesseth had worked for respondent a year when he was discharged. No complaint was made during that period of his conduct, his ability, his diligence nor his fidelity. When the accident in which the machine was damaged occurred his superiors did not blame him for negligence. They then explained that the machine had been changed since Nesseth had operated it previously, and he had not been informed of the change. Other employees had occasionally injured machines accidentally and had not been discharged. The machine was repaired the following day. All the circumstances shown in the record considered together sustain the finding that the breaking of the machine was not the real reason for Nesseth's discharge and that the real motive was his union activity. Hageman had worked two

years for the Lunds when he was discharged. During that time his wages had been raised three times. The reason assigned for his discharge, namely, lack of work, is contradicted by substantial evidence. He was discharged immediately after he had been elected treasurer of the union.

Finally, the respondents complain that the affirmative order requiring the reinstatement of the employees who went on strike was not justified. That part of the order referring to Lund is as follows:

"(c) Upon application, offer to those of his employees who were on the pay roll on March 25, 1937, and who went on strike, immediate and full reinstatement to their former positions, without prejudice to their seniority or other rights or privileges, dismissing, if necessary, all persons hired for the first time since March 25, 1937;

"(d) Make whole all of his employees who were on the pay roll on March 25, 1937, for any loss they may suffer by reason of any refusal of their application for reinstatement in accordance with paragraph 6 (c) herein, by payment to each of them of a sum equal to that which he would normally have earned as wages during the period from the date of any such refusal of his application to the date of reinstatement, less the amount, if any, which he earned during said period;"

That part of the order referring to Northland is identical with the foregoing provision except that the date of the strike is April 14, 1937.

The strike was called at the Hastings plant on March 25, 1937, because Lund refused to recognize the union for purpose of collective bargaining. About April 14, 1937, employees at the St. Paul plant joined the strike. The amended complaint on which a hearing was had was filed June 21, 1937. The hearing was held July 6 to 9, 1937, and the strike at that time was still in progress. The complaint alleged the unfair labor practices, but did not mention the strike. The Board found that the strike was caused by the unfair labor practices of the respondents charged in the complaint, and there is substantial evidence to support such finding.

The issues in this court are made by the petition of the Board for the enforcement of its order and the answers of the respondents. The answers admit that the order has not been complied with, allege certain defenses, and assign errors which it is claimed the Board made. With reference to the order of reinstatement both respondents allege that they have reinstated to their former positions, as far as positions were or are available, all employees who went on strike, and that they are now employing no person hired for the first time since the date of the strike. The dates of such reinstatements are not alleged, and it is not stated whether they occurred before or after the order was made, or whether such reinstatements were made voluntarily or in compliance with the order. The testimony discloses, however, that some of the strikers had returned to work prior to the hearing.

In the assignments of error it is alleged that the Board erred in finding that the strike was caused by unfair labor practices and in ordering reinstatement. The grounds urged are that the finding has no support in the evidence, but is contrary to law and the provisions of the National Labor Relations Act, and that the Board had no jurisdiction or power to make such finding and order.

In the briefs, but not in the answers, it is said that the order to reinstate the strikers "was erroneous and unlawful because that fact was not alleged in either charge or the complaint and no finding was made as to it in the intermediate report."

It is apparent that the point raised in the briefs is not the same as the defenses alleged in the answers. While the Act does not require common law formality in pleading, the case must be tried here upon the pleadings and not upon the briefs. In National Labor Relations Board v. Biles Coleman Lumber Co., 9 Cir., 98 F.2d 18, 20, it was said: "So far as concerns the enforcement of the Board's order this is a nisi prius tribunal, and the resistive respondent by its answer, rather than by brief, should raise the issue as to any allegation of the petition which is contested." Obviously, if the strikers have been reinstated, as alleged in the answers, the respondents are not prejudiced by the order whether the existence of the strike was mentioned in the complaint or not.

If we should apply to the pleadings in this court the strict rule which

the respondents in their briefs contend should apply to the pleadings before the Board, we would diregard the claim raised in the briefs that the reinstatement of the striking employees was not within the issues. But we conceive that the dominant and only purpose of the proceedings provided for in the law, both before the Board and in the courts, is to achieve the policies of the Act without regard to too close an observance of legal technicalities. Examining the situation from this angle, and keeping to the right of the line that separates the jurisdiction of the court from that of the Board, it is obvious that this court can not take evidence, nor make findings of fact, upon the claim in the answers that the strikers have been reinstated in their former positions. That is the province of the Board. Since the strike was in progress at the time of hearing the record is silent in regard to the reinstatement of many of the striking employees. If the strikers have returned to their positions and the dispute is ended nothing remains to be done. On the other hand, if disputes have arisen between respondents and the striking employees, further evidence should be taken and an order made, based thereon, which will effectuate the purposes of the Act. To aid in making possible and certain the fair and proper administration of the law we shall remand the case to the Board to take further evidence on the issue of reinstatement with the privilege of amending the pleadings upon this point, if the parties so elect. Ford Motor Co. v. National Labor Relations Board, 305 U.S. 364, 374, 59 S.Ct. 301, 83 L.Ed. ——. In all other respects the order will be enforced.

The order provides that Lund shall withdraw recognition from Independent Order of Ski Workers and "disestablish" the Order as representative of his employees for purposes of collective bargaining, and that he shall post notices accordingly. Lund does not seriously object to this part of the order for the reason that the Independent Order, it is said, has ceased to function and no longer exists; but he says that he should not be compelled to post a notice that he will "cease and desist" from what he claims he has not done and does not intend to do. This court had occasion to consider an order in this form in the case of Cudahy Packing Co. v. National Labor Relations Board, 8 Cir., 102 F.2d 745 (decided March 27, 1939). We there decreed the enforcement of the order construed to require the respondent not to recognize, support or encourage the further existence of the independent union; and we adhere to that interpretation of the order in this case.

A decree will be entered, pursuant to section 10(e) of the Act, 29 U.S.C.A. § 160(e), enforcing the order, except paragraph 6(c) and (d) thereof pertaining to the striking employees at the Hastings plant and paragraph 7(a) and (b) pertaining to the striking employees at the St. Paul plant. The case is remanded to the Board to take such relevant testimony as the parties may offer upon the question of the reinstatement of the employees who went on strike, and to make findings of fact and to enter such order thereon as the facts and the law warrant. Upon this issue the Board, its member, agent, or agency, designated to hear the evidence, may, if the parties so elect, permit the pleadings to be amended. The finding of the Board that the strike was caused by the unfair labor practices charged in the complaint is sustained, and further hearing will be limited to the allegation of reinstatement in the answers or as the answers may be amended to meet any new matter which by amendment may be alleged in the complaint.