## NATIONAL LABOR RELATIONS BOARD v. CENTRAL MISSOURI TELEPHONE CO.

### No. 483, Original.

Circuit Court of Appeals, Eighth Circuit.

Nov. 27, 1940.

564

L. N. D. Wells, Jr., Atty., National Labor Relations Board, of Washington, D. C. (Charles Fahy, Gen. Counsel, Robert B. Watts, Associate Gen. Counsel, Laurence A. Knapp, Asst. Gen. Counsel, and Bertram Edises and Malcolm S. Mason, all of Washington, D. C., Attys., National Labor Relations Board, on the brief), for petitioner.

Charles K. Hackler, of Warrensburg, Mo., for respondent.

Before SANBORN and THOMAS, Circuit Judges, and DEWEY, District Judge.

THOMAS, Circuit Judge.

The National Labor Relations Board has filed a petition in this court praying for the enforcement of the Board's order of October 2, 1939, directed to the respondent, Central Missouri Telephone Company. The respondent moves to dismiss the petition on the ground that the Board lacked jurisdiction to issue the order.

The respondent is a Missouri public utility corporation engaged in the business of owning and operating a number of local telephone exchanges in the state of Missouri. Upon charges duly filed by the International Brotherhood of Electrical Workers, Local Union B–1107, affiliated with the American Federation of Labor, the Board issued its complaint against respondent alleging that respondent had engaged in and was engaging in unfair labor practices affecting commerce within the meaning of section 8(1), (3), and (5), and section 2(6), and (7) of the National Labor Relations Act, c. 372, § 1, 49 Stat. 449, 29 U.S.C.A. § 151 et seq.

The respondent answered denying the alleged unfair labor practices and stating affirmatively that its business and its relations with its employees are matters exclusively of local and intrastate concern and that its activities and particularly its labor relations do not affect commerce within the meaning of section 10(a) and section 2(6), and (7) of the Act. At the close of the hearing the respondent moved to dismiss the proceedings for want of jurisdiction. The trial examiner denied the motion and filed his intermediate report finding the respondent guilty of unfair labor practices affecting commerce as charged in the complaint.

Thereafter the respondent and the Board agreed upon a stipulation of the main facts relative to the question of jurisdiction. The respondent, relying solely on this issue, waived its right to make exceptions to the report of the trial examiner, waived the making of findings of fact or conclusions of law by the Board, and consented that the Board issue a decision and order based upon the entire record including the stipulation.

The order of the Board directs that respondent (1) cease and desist from (a) interfering with its employees in the exercise of their right of self-organization and collective bargaining, (b) discouraging membership in Local Union B–1107, International Brotherhood of Electrical Workers, or any other labor organization, (c) refusing to bargain collectively with the Union as the representative of respondent's plant department employees, and (2) take the following affirmative action, (a) upon request, bargain collectively with the Union as the exclusive representative of respondent's plant department employees, and (b) post appropriate notices. The Board seeks enforcement of the affirmative provisions of the order. The single question to be determined is that of jurisdiction.

The Board made findings of fact relative only to the jurisdictional question raised by the respondent. On this issue

the findings, stipulations and the uncontroverted record disclose in brief the following facts: The respondent is engaged in the business of using and licensing others to use telephones and other apparatuses and appliances for the transmission of intelligence by electricity, and for such purposes constructing, owning, maintaining, and operating public and private telephone lines, central offices, and district exchanges. Twenty-four of the twenty-seven exchanges owned and operated by respondent are located in sections of Missouri contiguous with one another. The remaining three exchanges are located in a section of Missouri about 500 miles distant from the general area served by the other twenty-four. Approximately three-fourths of the twenty-seven exchanges are connected with one another by a network of wires and toll lines operated by the respondent. None of its lines extend beyond the limits of the state of Missouri.

Pursuant to sections 4924–4926, Rev. Stat. of Mo.1929, Mo.St.Ann. §§ 4924–4926, pp. 2239, 2240, 2245, and under an agreement with the Southwestern Bell Telephone Company, the switchboards of respondent in twenty-four of the twenty-seven towns served by it are connected with the lines of the Bell company for the purpose of effecting the transmission of messages destined for delivery at points in Missouri not on the respondent's lines and at points outside the state of Missouri. Messages destined for interstate and foreign delivery originating on the lines of respondent are routed over toll lines owned and operated by the Bell company and thence over the lines of the Bell system or those of other telephone companies. Whenever a long distance call is placed in any of the twenty-four towns in which respondent's switchboards are connected with the lines of the Bell company the operator of respondent makes the wire connection with the Bell line and thereafter the call is handled by employees of the Bell system. Incoming calls are handled in the same manner.

Interstate messages originating or received over respondent's lines amount to a relatively small percent. of the total messages transmitted by respondent in any one year. The revenue to respondent from this source, while substantial, is but a small portion of respondent's gross operating revenue each year.

The foregoing facts are all that need be considered in determining the jurisdictional question here presented, but additional facts found by the Board may be noted. The respondent maintains a local office at Warrensburg, Missouri, and general offices in Newton, Iowa. With the exception of director's qualifying shares, all of the stock of the respondent is owned by Investors Telephone Company of Chicago, Illinois, a Delaware Corporation, which is the sole owner of several telephone companies having their general offices at Newton. During the years 1936, 1937, and 1938, the respondent purchased equipment and materials valued at $25,193.66, $32,689.83, and $26,766.35, respectively, substantially all of which were shipped from points outside the state of Missouri. During the same years the respondent's gross operating revenue averaged approximately more than $170,000 a year. Pursuant to the stipulated facts the Board found that the number of interstate messages a month amounted to 7.6 percent. of the total messages completed, and the revenue therefor amounted to 13.2 percent. of the total revenue received in these years. The respondent now states that an error crept into these percentages as stipulated and that actually the percent. of interstate messages to total messages handled, and the revenue derived therefrom, is far smaller than that found by the Board. As will appear hereafter, this fact if true is immaterial in reaching a decision.

On the basis of the facts stated above the Board concluded that "respondent is engaged in traffic, communication and commerce among the several States and with foreign countries."

The respondent contends that as a matter of law the Board erred in this conclusion. It concedes that a company itself engaged in interstate telephonic communication is an instrumentality of interstate commerce. The respondent urges, however, that it is not itself an interstate carrier and that its activities are not, therefore, subject to the regulatory power of the federal government. Stated otherwise, the argument is that a local telephone company, engaged mainly in the transmission of intrastate communication over lines lying wholly within the limits of one state, can not be held an instrument of interstate commerce by the mere fact that it effects the transmission of interstate messages to and from points served

by it by connecting its lines to those of an interstate carrier.

These contentions clearly have been foreclosed to respondent by the decisions of the Supreme Court and by at least one decision of this circuit. The Daniel Ball, 77 U.S. 557, 10 Wall. 557, 19 L.Ed. 999; Cincinnati, N. O. & Tex. Pac. Ry. v. Interstate Commerce Comm., 162 U.S. 184, 16 S.Ct. 700, 40 L.Ed. 935; United States v. Colorado & N. W. R. Co., 8 Cir., 157 F. 321, 15 L.R.A.,N.S., 167, 13 Ann.Cas. 893; and see National Labor Relations Board v. Jones & Laughlin, 301 U.S. 1, 37, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; Associated Press v. National Labor Relations Board, 301 U.S. 103, 128, 57 S.Ct. 650, 81 L.Ed. 953; National Labor Relations Board v. Fainblatt, 306 U.S. 601, 606, 59 S.Ct. 668, 83 L.Ed. 1014. "Interstate communication of a business nature, whatever the means of such communication, is interstate commerce regulable by Congress under the Constitution". Associated Press v. National Labor Relations Board, supra [301 U.S. 103, 57 S.Ct. 654, 81 L.Ed. 953]. The respondent, in so far as it uses its lines to effect the transmission of interstate communication, thereby becomes an instrument of such commerce. In this respect it occupies no different position than any local transportation agency that may use its facilities as a link for the transportation of goods in interstate commerce. The governing rule was stated long ago by the Supreme Court in holding the steamer Daniel Ball, plying exclusively between points within the state of Michigan but carrying goods some of which were destined for places in states other than Michigan, engaged in interstate commerce. In The Daniel Ball, supra, 10 Wall. at page 565, 19 L.Ed. 999, the court said: "So far as she was employed in transporting goods destined for other States, or goods brought from without the limits of Michigan and destined to go places within that State, she was engaged in commerce between the States, and however limited that commerce may have been, she was, so far as it went, subject to the legislation of Congress. She was employed as an instrument of that commerce; for whenever a commodity has begun to move as an article of trade from one State to another, commerce in that commodity between the States has commenced. The fact that several different and independent agencies are employed in transporting the commodity, some acting entirely in one State, and some acting through two or more States, does in no respect affect the character of the transaction. To the extent in which each agency acts in that transportation, it is subject to the regulation of Congress."

The same principle was stated by this court in United States v. Colorado & N. W. R. Co., supra, in holding a small intrastate railroad company engaged in interstate commerce where its line was used to transport goods in interstate commerce. The court, at page 323 of 157 F., 15 L.R.A., N.S., 167, 13 Ann.Cas. 893, stated: "Every part of every transportation of articles of commerce in a continuous passage from an inception in one state to a prescribed destination in another is a transaction of interstate commerce. Goods so carried never cease to be articles of interstate commerce from the time they are started upon their passage in one state until their delivery at their destination in the other is completed, and they there mingle with and become a part of the great mass of property within the latter state. Their transportation never ceases to be a transaction of interstate commerce from its inception in one state until the delivery of the goods at their prescribed destinations in the other, and every one who participates in it, who carries the goods through any part of their continuous passage, unavoidably engages in interstate commerce."

The rule of these decisions is clearly applicable to the activities of the respondent. The fact that only a small part of its activities are connected with interstate commerce is not material. "The power of Congress to regulate interstate commerce is plenary and extends to all such commerce be it great or small." National Labor Relations Board v. Fainblatt, 306 U.S. 601, 606, 59 S.Ct. 668, 671, 83 L.Ed. 1014.

In its reply brief respondent insists that the evidence fails to show, and the Board failed to find, that its facilities are used by business concerns, that is that any communications "of a business nature" are included in the service which it furnishes. The inference sought to be drawn is that the proof and the findings fail to establish that respondent is engaged in interstate commerce. It is stipulated, however, and the Board found that respondent is a public utility engaged in the transmission

of intelligence between the states for hire. It was not necessary to prove or to find particularly that some of the messages carried interstate were orders for the shipment of merchandise from one state into another, or that some messages were concerned with a particular business transaction. As a public utility it was bound to transmit messages of every or any description offered by the public, including communications of a business nature. Section 2(6) of the Act declares that "The term 'commerce' means trade, traffic, commerce, transportation, or communication among the several States," etc. The definition is broad enough to include all communications of whatever nature transmitted by a public utility for hire.

■ The respondent contends further that even if it be held that respondent is engaged in interstate commerce the Board did not find and the record does not disclose that it has engaged in any unfair labor practice "affecting commerce" within the meaning of section 10(a) of the Act. The argument is that there is no finding and no showing that a strike among the twenty-two plant department employees of respondent, the unit affected by the Board's order, would have any immediate effect upon the respondent's communication facilities. The respondent states that it might be months before interstate communication would be in any manner affected, dependent on whether or not repairs of any consequence became necessary while the strike was in progress, and that in the meantime the switchboard operators could well continue to work as usual.

The respondent is clearly not entitled to complain of any lack of a finding by the Board in this respect. Following the report of the trial examiner the respondent expressly waived its right to findings of fact by the Board and consented that the Board issue its order based upon the entire record. The waiver precludes a complaint on this score.

■ Further, it was not necessary that the evidence disclose that a strike induced by unfair labor practices of respondent would have an instantaneous effect on interstate commerce. The record does disclose that nearly one-half of respondent's plant department employees are engaged in routine repair work on respondent's lines and other facilities of communication. The rest are engaged in rebuilding out-

worn lines and in new construction work. Any break in respondent's lines, whether due to storm or other causes, requires immediate attention if the communication facilities of respondent are not to be long disrupted. The relation of the respondent's plant department employees to its interstate communication activities is therefore an intimate rather than a remote one. In this situation the Board was not required to speculate on whether a strike among these employees would or would not instantly affect respondent's facilities for interstate communication. Necessarily this result would depend on the time of the strike and the length of its continuance. It is enough, therefore, that a showing is made that respondent's unfair labor practices may lead to strikes which threaten to obstruct commerce. National Labor Relations Board v. Fainblatt, 306 U.S. 601, 608, 59 S.Ct. 668, 83 L.Ed. 1014; Virginian Railway Company v. System Federation, etc., 300 U.S. 515, 554 et seq., 57 S.Ct. 592, 81 L.Ed. 789.

A decree will be entered enforcing the order in accord with the prayer of the Board's petition.