## J. L. BRANDEIS & SONS v. NATIONAL LABOR RELATIONS BOARD.

### No. 12782.

Circuit Court of Appeals, Eighth Circuit.

June 7, 1944.

Ralph E. Svoboda, of Omaha, Neb. (J. A. C. Kennedy, Yale C. Holland, George L. DeLacy, Kennedy, Holland, DeLacy & Svoboda, L. J. Tierney, and Harry R. Henatsch, all of Omaha, Neb., on the brief), for petitioner.

Roman Beck, of Washington, D. C. (Alvin J. Rockwell, Gen. Counsel, Malcolm F. Halliday, Associate Gen. Counsel, and Thomas B. Sweeney, Atty., National Labor Relations Board, all of Washington, D. C., on the brief), for respondent.

Before STONE, SANBORN, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This case, submitted upon a petition of J. L. Brandeis & Sons to review and annul a decision and order of the National Labor Relations Board and a request of the Board for enforcement of its order, presents only two questions, namely, (1) the jurisdiction of the Board and (2) the appropriate unit for collective bargaining.

The petitioner refused to bargain collectively with a labor union certified by the Board as the exclusive representative of petitioner's employees in a unit previously found to be appropriate for such purpose. The union filed charges, a com-

plaint was issued and petitioner answered, denying that it was subject to the Act and alleging that the unit determined was not appropriate. The issues were submitted upon a stipulated record and the Board found that the petitioner refused to bargain collectively with the union in violation of § 8(5) and (1) of the National Labor Relations Act, 49 Stat. 449, 29 U.S.C.A. § 151 et seq., and ordered the petitioner to cease and desist from such unfair labor practice and to bargain with the union upon request.

The petitioner is a Nebraska corporation engaged in owning and operating a retail department store in the city of Omaha in that state. The principal store occupies half a block and has ten floors and a basement. The basement and first seven floors are devoted to merchandising and the three upper floors are used for service departments and an assembly hall. The petitioner also operates, as departments of its store, two drug stores in other buildings; leases five floors of another building for warehousing, another building as a garage, carpenter, paint and repair shop, and another which supplies heat for the main store.

The store comprises 99 departments and 18 additional departments leased to other persons but held out to the public as departments of the store. In these 117 departments the petitioner has 984 employees and offers for sale to the public thousands of items and services to satisfy personal and household needs and desires.

During the fiscal year ending January 21, 1943, the petitioner purchased merchandise outside of Nebraska for resale at its store in Omaha at a cost of more than $3,700,000. For the fiscal year ending January 31, 1943, its mail orders were estimated to amount in value to $121,274, of which approximately $20,799 represented mail order sales to customers outside the state of Nebraska. During the same period it caused to be delivered to out-of-state customers approximately 8,900 packages.

The petitioner does not advertise on a nation-wide basis. It advertises in the Omaha World Herald which has a circulation of approximately 164,000 in Nebraska and 21,000 in Iowa. It also advertises in the Non Pareil, a newspaper published and circulated in Council Bluffs, Iowa.

The petitioner contends that the Board is without jurisdiction for the reasons (1) that the National Labor Relations Act does not apply to labor disputes in retail department stores; (2) that the doctrine of de minimis is applicable to its interstate sales, and that such sales are so small that to close the store would not have a direct and substantial effect upon interstate commerce; and (3) that the purchase and shipment of merchandise from outside the state for stocking the shelves of its store is not interstate commerce and should not be considered in determining the jurisdiction of the Board.

■ These contentions are supported by an exhaustive brief, but the arguments do not persuade. The Act does not exempt the retail business as such from the scope of its coverage. Section 10(a) provides that: "The Board is empowered * * * to prevent any person from engaging in any unfair labor practice * * * affecting commerce." (Italics supplied.) The only test of the applicability of § 10(a) of the Act to any business or enterprise is found in § 2(7), which provides that: "The term 'affecting commerce' means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce." National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 41, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 220-223, 59 S.Ct. 206, 83 L.Ed. 126.

■ It is argued that the Act applies only to industries and that selling merchandise at retail is not an industry. Conceding arguendo that the law applies only to labor relations in industry, it can not be successfully maintained that the retail business is outside the scope of the meaning of that term. One of the definitions of industry given in Webster's International Dictionary (1942 Ed.) is "any department or branch of * * * business * * * which employs much labor and capital and is a distinct branch of trade." The selling of merchandise at retail is such a business.

Petitioner concedes that the Act may apply to department stores "enormous" in character or of "vast" operations, giving them "national" character, citing as illustrations National Labor Relations Board v. J. L. Hudson Co., 6 Cir., 135 F.2d 380, certiorari denied 320 U.S. 740, 64 S.Ct. 40; Santa Cruz Fruit Packing Company

v. National Labor Relations Board, 303 U. S. 453, 463, 58 S.Ct. 656, 82 L.Ed. 954; and National Labor Relations Board v. Bank of America Natl. Trust & Savings Ass'n, 9 Cir., 130 F.2d 624. Clearly the inference sought to be drawn from these cases is not warranted. The adjectives quoted are used in each instance as descriptive only of the facts involved and not as limiting the reach of the law or the powers of Congress.

It is vigorously contended that the maxim "de minimis non curat lex" is applicable to petitioner's interstate sales and that the stoppage of such sales by strikes or otherwise would not affect commerce in any substantial way. In support of this argument it is pointed out that the petitioner's out-of-state mail order sales of $20,000 for the year ending January 31, 1943, amount to only .0024 per cent. of its total sales estimated to be $8,500,000 for the year; that the 8,900 packages sent to out-of-state customers during the year is but 4 per cent. of the number of packages delivered in Omaha for the same period; and that the charge accounts to out-of-state customers represent less than 2 per cent. of total sales for the year. It is further said that of the 2.2 per cent. of total sales made to out-of-state customers during the year over half such sales were made on the store premises.

■ The courts have frequently held that the Act "cannot be applied by a mere reference to percentages." Santa Cruz Fruit Packing Company v. National Labor Relations Board, supra, 303 U.S. at page 467, 58 S.Ct. at page 661, 82 L.Ed. 954; National Labor Relations Board v. Fainblatt, 306 U.S. 601, 607, 608, 307 U.S. 609, 59 S.Ct. 668, 83 L.Ed. 1014; National Labor Relations Board v. Crowe Coal Co., 8 Cir., 104 F.2d 633, 639; National Labor Relations Board v. Central Missouri Tel. Co., 8 Cir., 115 F.2d 563, 566; National Labor Relations Board v. J. G. Boswell Co., 9 Cir., 136 F.2d 585, 589. The application of the Act does not depend upon the magnitude of the business nor the comparative amount of interstate sales. The test of the Board's jurisdiction is not the volume of the interstate commerce which may be affected, but the existence of such a relationship between the employer and his employees to commerce that an unfair labor practice would lead or tend to lead to a labor dispute burdening or obstructing the free flow of commerce. Sections

10(a) and 2(7); National Labor Relations Board v. Fainblatt, supra. In brief, the jurisdictional test in such a case as the present one is whether the stoppage of the business by reason of labor strife would tend substantially to affect interstate commerce. The principle applicable is one of degree. When the unfair labor practice involved is found to have such a close and substantial relation to the free flow of interstate commerce that the practice tends to obstruct that commerce, the jurisdiction of the Board to apply the preventive remedies of the Act is undoubted.

The foregoing rules indicate the scope of the Board's jurisdiction under the Act whether the labor dispute involved occurs in a manufacturing establishment, a mining enterprise, a banking or a retail mercantile business.

■ So far we have considered only the effect of the sales of merchandise by petitioner to out-of-state customers. The Board, however, relied also upon the purchases of merchandise for stocking the store from points outside the state. It is stipulated that for the year ending January 31, 1943, the petitioner purchased merchandise for resale at a cost of $4,941,236, of which about 75 per cent. was purchased and shipped to it from outside the state of Nebraska. The contention is that the Board erred in taking these outside purchases and shipments into consideration. Clearly if a strike of the employees in the store should lead to the closing of its doors and stop the selling of merchandise the flow of supplies from outside the state would soon stop also. The effect upon commerce would be close and substantial. But the petitioner says such a labor dispute would serve only to shift local commerce to competing stores and would not affect the flow of interstate commerce. A similar contention was urged in National Labor Relations Board v. Bradford Dyeing Ass'n, 310 U.S. 318, 326, 60 S.Ct. 918, 84 L.Ed. 1226, and the Supreme Court held that the fact that the employer's customers might be able to secure the same services elsewhere was not material. The basis of the contention is conjectural; but, even if true, it does not prove that a shutdown of the store would not substantially affect the flow of interstate commerce.

■ It is urged, also, that when shipments of out-of-state merchandise come to rest in the store interstate commerce ends

and that what may occur thereafter does not directly affect it. The argument is unsound. If when selling at the store stops purchasing outside the state also stops, it is fair to say that the latter is the effect of the former. See National Labor Relations Board v. J. L. Hudson Co., supra; Canyon Corporation v. National Labor Relations Board, 8 Cir., 128 F.2d 953; National Labor Relations Board v. Robert S. Green, Inc., 4 Cir., 125 F.2d 485; National Labor Relations Board v. Kudile, 3 Cir., 130 F.2d 615, certiorari denied 317 U.S. 694, 63 S.Ct. 436, 87 L.Ed. 555; National Labor Relations Board v. Suburban Lumber Co., 3 Cir., 121 F.2d 829, 831, certiorari denied 314 U.S. 693, 62 S.Ct. 364, 86 L.Ed. 554. In determining its own jurisdiction the Board properly considered the possible effect of labor strife in the store upon the flow of merchandise purchased and shipped from outside the state to maintain the constantly diminishing stock offered for sale at retail. In the cases cited supra both the inflow and the outflow of commerce were considered in determining jurisdiction.

The petitioner's second contention is that, even though subject to the jurisdiction of the Board, its refusal to bargain with the union does not violate the Act because the bargaining unit certified by the Board is not appropriate.

The Board found that all the employees in the store engaged in the alteration of men's, boys' and women's clothing (comprising alteration department 36 and department 82), excluding supervisory employees, constitute a unit appropriate for the purposes of collective bargaining within the meaning of § 9(b) of the Act.

The petitioner contends that the bargaining unit should be store-wide because there is a centralized management of the store. All employees are paid on a weekly basis; hours of work are the same throughout the store; the labor policy of the store is set by three top executives; vacations, pensions, pay days, bonuses, sick benefits, social activities, labor disputes, and the like are all on a store-wide basis; and the management prefers a store-wide unit.

The employees in the two alteration departments are organized in Local No. 285 of the Amalgamated Clothing Workers of America, affiliated with the C. I. O. The employees involved are tailors, pressers, seamstresses and fitters, and journeymen-

tailors, with duties distinct from those of any other employees in the store. They are generally considered as belonging to a skilled trade, having interests separate from those of other employees of the store. The union confines its membership to such units; and it has been bargaining on behalf of such employees since long before the passage of the Act.

Section 9(b) of the Act provides that: "The Board shall decide in each case whether * * * the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof." The standard of determination prescribed is that the selection of the unit must be appropriate "to insure to employees the full benefit of their right to self-organization and to collective bargaining, and otherwise to effectuate the policies of this Act."

█ Clearly the question here "is one of specific application of a broad statutory term in a proceeding in which" the Board "must determine it initially." The Board's decision in such a case must be accepted by a reviewing court "if it has 'warrant in the record' and a reasonable basis in law." National Labor Relations Board v. Hearst Publications, Inc., 64 S.Ct. 851, 861, 88 L.Ed. ——. See, also, Pittsburgh Plate Glass Co. v. National Labor Relations Board, 8 Cir., 113 F.2d 698, 701, affirmed 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251; Bussman Mfg. Co. v. National Labor Relations Board, 8 Cir., 111 F.2d 783, 785; National Labor Relations Board v. Lund, 8 Cir., 103 F.2d 815, 819. In the Pittsburgh Plate Glass Co. case, supra, this court said in reference to the discretion of the Board under § 9(b): "The decision of the Board is conclusive unless arbitrary or capricious." [113 F.2d 701.]

█ The petitioner has failed to show that the decision of the Board in this instance is either arbitrary or capricious. The duty of the Board under the Act to insure to the employees the full benefit of their right to self-organization furnishes a reasonable basis in law, and the separate functional duties of the employees in the two departments involved constitute a rational basis in fact for the finding that they constitute an appropriate unit for the purpose of collective bargaining.

The order is affirmed and a decree enforcing it will be entered.