United States Court of Appeals
FOR THE EIGHTH CIRCUIT

_____

No. 96-2548
No. 96-2766

_____

Package Service Company, Inc.,          *
                                        *
        Petitioner/Cross-Respondent,    *
                                        *
    v.                                  *
                                        *   Appeals from the National
National Labor Relations Board,         *   Labor Relations Board.
                                        *
        Respondent/Cross-Petitioner,    *
                                        *
United Steelworkers of America,         *
                                        *
        Intervenor.                     *

_____

Submitted: January 13, 1997
Filed: May 14, 1997

_____

Before LOKEN, BRIGHT, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

LOKEN, Circuit Judge.

    This appeal concerns the back pay remedy under the National Labor Relations Act, 29 U.S.C. §§ 151 *et seq*.  Kansas City-based Package Service Company, Inc. ("PSC"), purchased the assets of a distressed Pittsburgh printing company and

transferred them to a newly-formed subsidiary. In attempting to revive the business, PSC's subsidiary committed several unfair labor practices. The National Labor Relations Board (the "Board") ordered back pay for adversely affected workers. In a subsequent proceeding, after the acquired business had ceased operations, the Board imposed back pay liability on PSC, the surviving parent. PSC appeals. We conclude that parental liability is appropriate on the facts of this case and therefore grant the Board's petition to enforce.

## I.

PSC's subsidiary, Allegheny Graphics, Inc. ("Graphics"), acquired the assets of Allegheny Label, Inc., hoping to turn around the business in part by making Graphics a non-union employer. Graphics refused to bargain with the United Steelworkers of America, the collective bargaining representative of Allegheny Label's work force. The union filed unfair labor practice charges, and the Board issued a complaint against Graphics. The charges were tried in Pittsburgh in March 1991.

Graphics permanently closed the Allegheny Label facility in March 1992 for business reasons. Three months later, the Board issued its decision, holding that Graphics as Allegheny Label's successor violated §§ 8(a)(3) and 8(a)(5) of the NLRA by setting terms of employment without consulting the union, by informing job applicants that Graphics was a non-union employer that would not hire union supporters, and by refusing to hire thirteen Allegheny Label employees because of their union affiliation. The Board ordered Graphics to reinstate the thirteen employees with back pay; it ordered additional back pay to compensate all employees at the levels prescribed in Allegheny Label's collective bargaining agreement until Graphics ceased operations. The Third Circuit enforced that order. NLRB v. Allegheny Graphics, 993 F.2d 878 (3d Cir. 1993)(Table).

When the parties failed to settle back pay issues, the Board issued a back pay specification, alleging that PSC should be liable for all back pay awarded because PSC and Graphics "constitute a single integrated business enterprise and a single employer and/or joint employer within the meaning of the [NLRA]." After an evidentiary hearing, the administrative law judge issued a supplemental decision holding PSC liable for the back pay awarded because PSC and Graphics were a "single employer." The Board affirmed, ordering PSC and Graphics to pay $318,287 in back pay. PSC appeals, challenging only the Board's single employer decision.

## II.

Because businesses have great organizational flexibility, it is often necessary to determine whether the "employer," for NLRA purposes, is simply the legal entity that pays wages and benefits to the employees in question. In a variety of contexts the Board is called upon to determine whether multiple facilities owned by one corporation or by two or more affiliated corporations should be considered a single employer, an issue on which the general definition in 29 U.S.C. § 152(2) casts little light. For example, in Radio & T.V. Broad. Technicians Local 1264 v. Broadcast Serv. of Mobile, Inc., 380 U.S. 255 (1965), commonly owned broadcasting stations were found to be a single employer whose revenues could be combined for purposes of the Board's jurisdiction; that in turn resulted in the preemption of state court litigation. More commonly, the single employer issue arises in bargaining disputes -- if the Board determines that separate corporations or facilities are a single employer whose employees *may* be placed in the same collective bargaining unit, it then must resolve the ultimate issue whether those employees are in fact an appropriate unit. See South Prairie Constr. Co. v. Local No. 627, IUOE, 425 U.S. 800, 802-03 (1976); Marine Welding & Repair Works, Inc. v. NLRB, 439 F.2d 395, 397 (8th Cir. 1971). In this case, the single employer issue is relevant in determining whether PSC should be liable for the unfair labor practices of its insolvent subsidiary, Graphics.

In resolving single employer issues, the Board has developed a broad and general test:

> the board considers whether their total relationship reveals: (1) some functional interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. While none of these factors, separately viewed, ha[s] been held controlling, stress has normally been laid upon the first three . . . .

Pulitzer Pub. Co. v. NLRB, 618 F.2d 1275, 1279 (8th Cir.), cert. denied, 449 U.S. 875 (1980), quoting Parklane Hosiery Co., 203 N.L.R.B. 597, 612 (1973). This general test based upon four non-controlling factors is not adequate to resolve a case such as this unless the Board explains why its single employer finding, without more, is sufficient to decide the ultimate issue of parent corporation liability. For example, if the ultimate issue had been whether employees of PSC and Graphics in Kansas City and Pittsburgh were an appropriate collective bargaining unit, the ALJ's single employer finding would clearly not have been sufficient to decide that issue. See NLRB v. DMR Corp., 699 F.2d 788, 791-93 (5th Cir.), cert. denied, 464 U.S. 852 (1983);

In deciding whether a parent corporation is liable for its subsidiary's unfair labor practices, the Board cannot ignore the general principle that "[t]he insulation of a stockholder from the debts and obligations of his corporation is the norm, not the exception." NLRB v. Deena Artware, Inc., 361 U.S. 398, 403 (1960). Yet the Board's general single employer test is so broad that it could literally apply in virtually all cases in which affiliated corporations have common ownership and management and significantly integrated operations. Thus, if the Board relies on its determination of the

single employer issue in this kind of case, it must emphasize those factors that make it appropriate to impose derivative unfair practice liability on a corporate parent, as it did in <u>Royal Typewriter Co. v. NLRB</u>, 533 F.2d 1030, 1042-43 (8th Cir. 1976). But here, the ALJ simply reviewed the four single employer factors without explaining their relative significance. Because this generalized single employer analysis does not satisfactorily explain why PSC is liable for Graphics's unfair labor practices, we must examine more closely whether the Board properly overrode normal principles of limited liability in assessing back pay against PSC.

### III.

Corporate law recognizes situations in which it is appropriate to "pierce the veil" of separate affiliates. <u>See, e.g.</u>, <u>H.J., Inc. v. International Tel. & Tel. Corp.</u>, 867 F.2d 1531, 1549 (8th Cir. 1989). It is well settled that the Board in applying the federal labor laws may do likewise. <u>Deena Artware</u> reflects one such situation, where assets and jobs were transferred among affiliates to frustrate an outstanding back pay obligation. <u>See</u> 361 U.S. at 413-14 (Frankfurter, J., concurring). In this case, there was no such duplicity. It is undisputed that Graphics closed because of economic adversity, not to evade its unfair labor practice obligations. Thus, the basis for holding PSC liable must be found in the nature of those unfair practices when committed.

A number of circuit court cases, dating from the early years of the NLRA, have held that a corporate owner who controls and directs labor relations without regard to the corporate entity may be liable for remedying the corporation's unfair labor practices. <u>See</u> <u>NLRB v. International Measurement & Control Co.</u>, 978 F.2d 334, 340

(7th Cir. 1992) ("perhaps the 'employer' is he who calls the tune, and not just whoever pays the piper"); Great Chinese Amer. Sewing Co. v. NLRB, 578 F.2d 251, 255 (9th Cir. 1978); NLRB v. Condenser Corp., 128 F.2d 67, 71 (3d Cir. 1942) ("[w]hat is important . . . is the degree of control over the labor relations"); NLRB v. Swift & Co., 127 F.2d 30, 32 (6th Cir. 1942); NLRB v. Lund, 103 F.2d 815, 818 (8th Cir. 1939).

In Royal Typewriter, for example, a subsidiary of Litton Industries committed unfair labor practices by refusing to bargain about the effects of a contemplated plant closing. Invoking the single employer doctrine, the Board ordered Litton to participate in prospective relief such as preferential hiring because Litton made the decision to close the plant and controlled the labor negotiations that surrounded that decision. In enforcing this order, we stated:

> We do not think that a conglomerate can act in negotiations as a single employer and then expect to avoid the consequences if unfair labor practice charges result from such conduct.

533 F.2d at 1043. Here, PSC's acquisition strategy included making Graphics a non-union employer, and key executives of PSC personally implemented that strategy, committing in the process the unfair labor practices underlying this back pay award. PSC argues that it did not control day-to-day labor relations after the Graphics facility was initially staffed. But PSC's control over its subsidiary's conduct in committing unfair labor practices is the critical factor. See Penntech Papers, Inc. v. NLRB, 706 F.2d 18, 26 (1st Cir.), cert. denied, 464 U.S. 892 (1983).

Unless the back pay remedy is used punitively, "[t]he Board's broad remedial power to order compensation for lost pay [may be] exercised not only to remedy the consequences of an unfair labor practice, but also in aid of the Board's authority to deter unfair labor practices." NLRB v. United Marine Div., Local 333, Nat'l Maritime Union, 417 F.2d 865, 868 (2d Cir. 1969), cert. denied, 397 U.S. 1008 (1970). Here, the back pay provides a compensatory remedy to workers adversely affected by the unfair labor practices. In addition, making PSC liable for that back pay places responsibility for the remedy on the party actually responsible for the unlawful conduct, thereby helping to deter corporate owners who might otherwise implement an unlawful labor relations strategy through a newly-formed, undercapitalized subsidiary. So long as the Board limits imposition of this kind of derivative liability to situations in which the corporate parent has "exercise[d] direct control over a specific transaction," Esmark, Inc. v. NLRB, 887 F.2d 739, 757 (7th Cir. 1989), its remedial order should be enforced.

The record contains substantial evidence of a single employer relationship between PSC and Graphics justifying the Board's decision to hold PSC derivatively liable. See Allegheny Graphics, Inc., 320 N.L.R.B. No. 146 at 2-4 (Apr. 15, 1996). We deny PSC's petition for review and grant the Board's cross-petition to enforce.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-7-